# HUTCHINSON GAS COMPANY v. PHOENIX INDEMNITY COMPANY AND OTHERS.[1]

November 10, 1939.

No. 32,179.

*Charles H. Weyl, K. A. Campbell,* and *Tautges, Eichelzer & Tautges,* for appellant.

*J. D. Nunan* and *R. M. McCareins,* for plaintiff-respondent.

*W. E. Reyerson,* for defendant-respondents.

LORING, JUSTICE.

This case was a proceeding under the declaratory judgments act. It comes here upon an appeal from a judgment for the

[1]Reported in 288 N. W. 847.

plaintiff entered pursuant to a motion for judgment upon the pleadings.

The principal question involved is the proper construction of a public liability policy issued by the indemnity company to the gas company for a premium of $162.70. The suits for which the gas company seeks to establish coverage arose out of the deaths of four men and injury to another, which occurred near Big Falls in this state in a brooder house which these men had installed upon a truck in which to camp while upon a hunting expedition in November, 1938. The victims of the accident were all residents of Hutchinson, and on the day before they left on their hunting trip they installed this brooder house upon their truck and had the gas company install therein two gas plates for cooking and one "Radiantfire" gas heater, which were to be operated by propane gas which they took along in bottle or tank containers. One of the gas containers was apparently connected with the gas stoves by a copper tube. The men arrived at their destination in the north woods in the early evening and spent the night in the little house which was about 8 feet wide, 14 feet long, and 7½ feet high. The following morning two game wardens found four of them dead and the other unconscious. Suits were brought against the gas company by the personal representatives of the deceased and by the injured survivor on the theory that the gas company was negligent in its installation in not supplying a ventilator to carry off the carbon monoxide gas which resulted from the combustion which took place in the fixtures which it had installed. Upon refusal of the indemnity company to defend the cases and upon its denial of coverage under its policy, the gas company brought this suit under the declaratory judgments act, including as defendants not only the indemnity company but the plaintiffs in the suits so commenced. Venue was laid in McLeod county, and the indemnity company sought a change thereof to Ramsey county, which it claims as its residence under the venue laws of this state. This motion was denied,

and a motion by the plaintiff for judgment on the pleadings against the indemnity company was granted.

The liability policy which the indemnity company issued to the gas company was designated a "Contractors' and Outside Form." Its general coverage clause reads as follows:

Phoenix Indemnity Company "Does Hereby Agree with the Assured herein named, subject to the limitations and conditions herein contained, as respects bodily injuries, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons not in the employ of the Assured, as the result of accidents occurring while this Policy is in force by reason of and *during the prosecution by the Assured of the work described in Statement 4, at the places therein named."* [Italics supplied.]

Statement four reads as follows:

"4. (a) The locations, by State, Town or City, Street and Number, of all places where work covered by this Policy is to be performed by the Assured are as follows: Hutchinson, Minnesota and elsewhere in the State of Minnesota

| (b)   Description of Work Covered by this Policy | Class | Estimated Wages & Other Remuneration for Policy Period | Rate per $100 of Wages and Other Remuneration | Advance Premium |
|---|---|---|---|---|
| Gas Works—including the hazards of gas explosion, inhalation or asphyxiation—all operations—including maintenance, salesmen—outside, collectors and meter readers. (Stores and construction of buildings or gas holders to be separately rated).. | 7500 | $4,500 | 2.595 | $116.78 |
| Clerical office employees— Not otherwise classified.... | 2450 | 900 Min. prem. | .025 applies | .23 150.00 |
| Contractual l i a b i l i t y endorsement ............... | | | | 12.70 |
| (c)   Hod   or   M a t e r i a l Hoists — installation, repair and removal (not operation) ................... | 3443 | | | |
| (d)   Hod   or   M a t e r i a l Hoists—operation ........ | 5165 | | | |
| (e) Other Operations. If, while this Policy is in force, the Assured shall do any construction work at the locations specified above in this Statement as the places where work covered by this Policy is to be performed, other than the work specifically described above in this Statement, this Policy shall cover such other construction work and the Assured shall pay to the Company the premium therefor computed at the Company's premium rate or rates applicable thereto ................... | | Total | Minimum pr. | $162.70 |

The Minimum Premium is $150.00             Advance Premium, $129.71"

Subdivision six of section one, which relates to agreements, insofar as it is pertinent to the question here under consideration, reads as follows:

"6. EXCLUSIONS. This Policy does not cover: *  *  *

"(c) bodily injuries or death caused by reason of:

"(1) accidents occurring after the final completion of the work performed by the Assured at the place of occurrence of such accidents; * * *

"(5) the consumption, use or handling by persons not in the employ of the Assured, while elsewhere than within or upon premises occupied or used by the Assured for the prosecution of the work described in and covered by this Policy, of anything obtained from Assured; * * *."

It will be seen from the foregoing quotations from the policy that the general coverage applied only during the prosecution of work and that death or injuries by accidents occurring after the final completion of the work at the place of accident is not covered, nor are those accidents covered which are due to the consumption or use of anything obtained from the assured as set out in clause five of subdivision (c) of paragraph six of section one.

It is the contention of the gas company that the provisions of subdivision (b) of paragraph four of section three modify the paragraph relating to exclusions and that this construction gives them full coverage of the suits brought against them, and in fact covers all public liability while it operates a gasworks, but we think that like any other contract this policy must be taken by its four corners and construed as a whole. Giving the provisions of statement four the broadest possible construction in favor of the gas company as covering all of its operations, we find ourselves confronted with the clear and unmistakable provisions that the coverage of the policy relates only to work during its prosecution and ceases at its completion. We see no ambiguity in the contract. Such being the case, there is no room for construction even though the rule is that such a contract should be construed most favorably to the indemnitee. The rule does not justify changing the contract. True, the policy is the form ordinarily used for contractors engaged in construction work. As applied to the gas company, it is calculated principally if not entirely to cover public liability as it may arise in connection with installa-

tions and other construction work, but that does not justify a construction of. the policy that would make it cover generally all public liability·or give to the gas company a form of insurance not contracted for. That is the construction which respondent contends for. The reference to certain employes in statement 4 is undoubtedly for the purpose of including their wages as a basis for the rate charged for the premium. The language is awkward, but the meaning seems clear when reference is had to the rest of the contract. The gas company may or may not have thought it was getting some other kind of coverage, but that is not the question here. The language is clear. The extraordinary ingenuity of counsel in their effort to stretch the contract to cover their present needs arouses admiration but does not persuade. The policy does not cover the actions for which suits have been brought. The indemnity company is not bound either to defend or indemnify the gas company in these suits. In view of this holding, it becomes unnecessary to pass upon the questions relating to venue and the availability of the declaratory judgments act.

We feel that there is a clear distinction between the questions presented in this case and those presented in Biwabik Concrete Aggregate Co. v. U. S. F. & G. Co. 206 Minn. 239, 288 N. W. 394, filed herewith.

The judgment is reversed.

GALLAGHER, CHIEF JUSTICE (dissenting).

I am unable to subscribe to the construction given in the majority opinion to the public liability policy involved herein.

The question for consideration is: Did the parties intend at the time of the issuance of the policy in question to protect the assured against loss for injuries arising out of the negligent installation by it of a gas heater and gas plates in a brooder house to be used by·hunters on a trip within the state of Minnesota ·but away from ·Hutchinson, the proposed use being known to the gas company at the time of installation.

The applicable provisions of the policy are set out in the majority opinion and need not be repeated here. With reference to the general coverage clause, I feel that the accident in question occurred "during the prosecution by the Assured of the work described in Statement 4," which includes "all operations." The majority opinion construes the quoted phrase to mean that the policy affords coverage only if the accident involved happened during the same time that the assured was engaged in doing the specific task which caused the accident. The effect of such a construction can be illustrated by assuming that an employe of the gas company was ordered to put a gas stove in a private home and that because of his negligence in so doing an explosion occurred injuring the occupants of the house. Under the adopted interpretation, the policy would cover the accident if the employe was engaged in his work at the time of the explosion; it would not cover such liability if the employe had picked up his tools and left the premises in which the work was negligently done. I cannot believe that the parties intended such a fortuitous circumstance to fix the limit of liability under the contract. It would be more reasonable to conclude that the phrase "during the prosecution by the Assured of the work described in Statement 4" was intended to limit the insurer's duties under the policy to that period of time during which the assured continued to install and supply gas fixtures.

Nor do I believe that the insurer can escape liability by resorting to the exclusionary provisions of the policy. The accident did not occur "after the final completion of the work performed by the Assured at the place of occurrence of such accidents." To complete is to bring into a state of entirety or perfection. Webster's New Int'l. Dictionary (2d) 1935. The place of the occurrence of the accident was the brooder house in which the hunters were asphyxiated, and the work there performed by the assured was the installation of the gas heater and plates. The complaint in the action brought against the gas company is based on the theory that this work was negligently done or, in other words,

that it was deficient. If the allegations contained in that complaint are true (as we must assume for present purposes), the work of the gas company was not pursued to final completion, and therefore the first exclusion relied upon by appellants is not applicable.

Finally, the bodily injuries and death for which recovery against the gas company is sought were not "caused by reason of * * * the consumption, use or handling by persons not in the employ of the Assured, while elsewhere than within or upon premises occupied or used by the Assured for the prosecution of the work described in and covered by this Policy, of anything obtained from Assured." It is true that the hunters used and handled the gas fixtures and supplies obtained from the assured, but they did not do so "elsewhere than within or upon premises occupied or used by the Assured for the prosecution of the work described in and covered by this policy." The premises used by the assured for installing the gas heater and plates was the brooder house, and it was within that same brooder house that the hunters used and handled the things obtained from the assured. Apart from this, I do not think that the accident was "caused" by such use if that term be defined in a practical sense. Rather it was "caused" by the negligence of the gas company in installing equipment which was not safe for the use to which it was to be put.

It seems to me that the trial court reached the proper conclusion and that its decision should be affirmed.