JOSEPH W. CROOK *vs.* KALAMAZOO SALES & SERVICE, INC.

DECEMBER 23, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

388

BAKER, J. This is a proceeding in which a receiver was appointed by the superior court to liquidate the affairs of the respondent corporation. In the course of that operation the Lumbermens Mutual Casualty Company, hereinafter referred to as the insurer, which had previously insured the respondent against certain risks, filed a petition herein asking that it not be required to defend respondent further in certain specified pending actions at law brought by Gladys V. Bentley and William Bentley, or to pay any judgments therein which might be entered against respondent. A justice of the superior court heard such petition, granted the relief prayed for and entered a decree to that effect. From that decree the two plaintiffs in the actions at law above referred to duly prosecuted their appeal to this court. The only question raised herein relates to the correctness of the decree.

The following undisputed pertinent facts appear from the record. In August 1949 William Bentley, who lived

with his sister in the town of East Providence, purchased from respondent under a conditional sales agreement a combination oil and gas range, which it agreed to service for a year and which was duly delivered to the Bentleys and set up in their kitchen. Thereafter during the fall and winter it became necessary at times for respondent's employees to adjust and service the range when it did not operate satisfactorily. On March 22, 1950 during the absence of the Bentleys a fire occurred in their home. Extensive damage was done to the house, which was owned by Gladys V. Bentley, particularly in the center thereof and in the area near the range. It also appeared in evidence that in the dining room which adjoined the kitchen there was an oil burning circulating heater the stove pipe of which entered the same chimney as did that of the range. The records of respondent showed that the last visit of its employees to service the range was on March 2, 1950 and Miss Bentley admitted that the last visit of such service-men was at least a week prior to the fire.

Thereafter separate actions at law to recover damages were brought by the Bentleys against the respondent by writs dated April 26, 1950 substantially on the ground that the condition of the range was the cause of the fire. Before either case was tried the instant proceeding, asking for the dissolution of the respondent corporation and the appointment of a receiver, was begun January 2, 1952 and an injunction was issued enjoining prosecution of actions at law against respondent. Shortly thereafter the Bentleys filed petitions for leave to proceed with their cases and decrees were entered permitting them to do so. In the meantime a receiver for the respondent corporation had been appointed.

On February 13, 1952 the case brought by Gladys V. Bentley was tried before a jury in the superior court. The declaration therein contained four counts. Directed verdicts for the defendants were ordered by the trial justice

on two of the counts and the other two counts were submitted to the jury which disagreed. The declaration in the action brought by William Bentley was substantially similar to the one filed in his sister's case. The latter case was investigated and tried by counsel for the insurer which had issued the policy dated February 9, 1950 covering the respondent for one year against certain specified risks, subject to named conditions and exclusions.

The insurer, however, undertook such defense only at respondent's request and after entering into an agreement with it, dated May 8, 1950, to the effect that the insurer should proceed with the investigation and provide for the defense in court of any claim or action growing out of the alleged accident, which occurred on or about March 22, 1950, without prejudice to its rights under the terms of the policy. Another provision in the agreement was "that no action heretofore or hereafter taken in the investigation, negotiation, or defense shall be construed as a waiver of the right of the company to deny coverage to us."

Under the instant petition filed by the insurer the question raised is whether its policy under consideration covers respondent for damages caused in the Bentley house on or about March 22, 1950. The insurer contends that there is no such coverage whereas the Bentleys take a contrary view.

The policy under consideration covers both bodily injury and property damage liability. We are concerned here only with the latter which is set out in the policy as follows:

> "Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including loss of use thereof, caused by accident occurring within the endorsement period and arising out of the hazard defined in Division A of Insuring Agreement I of the policy and arising

solely and directly out of the work and at the locations described in the Schedule of this endorsement."

Division A of Insuring Agreement I above referred to states: "Division A. Premises-Operations.

The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

In the schedule of the above property damage endorsement, operations such as "Sheet Metal Work Erection, Installation or Repair N.O.C.—etc." are listed as being included in the type of work set out in the quoted property damage liability clause. Further it is not disputed by the insurer that the Bentley house, in view of the servicing of the range there by respondent's employees, is a location described in the said schedule as being covered by the policy. The insurer, however, relies for its position on the following general exclusion and on an exclusion to its insuring agreement:

"Exclusions

This policy does not apply:
* * *

(d) under divisions A and E of the Definition of Hazards, to the handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from the premises; or to operations, other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from the premises * * *."

"Additional Exclusions

This policy does not apply to injury to or destruction of:
* * *

4. property, if the accident occurs after operations have been completed or abandoned at the immediate place of occurrence thereof and away from

premises owned, rented or controlled by the insured, except (a) pick-up and delivery operations, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operation for which the classification stated in Division A of the Declarations or in the company's manual specifically includes Completed Operations; provided operations shall not be deemed incomplete because (a) the operations have been improperly or defectively performed (b) operations have ceased pending the acceptance of the work or (c) further operations may be required pursuant to a service or maintenance agreement. The occupancy of any portion of a building, or the use of any equipment or construction project for its intended purpose, shall be proof of the completion of such portion, equipment or project."

In our judgment the language used in the policy, especially in the above exclusion clauses, is clear and unambiguous. It sets out specifically that there is no coverage if the accident which injures or destroys the property in question occurs after operations have been completed or abandoned and that in certain specified instances the operations shall not be deemed incomplete. Moreover it is provided that the use of any equipment for its intended purpose shall be proof of the completion of such equipment or project, and that such operations shall not be incomplete because "further operations may be required pursuant to a service or maintenance agreement." Upon consideration of the undisputed facts herein it is our opinion that the provisions of exclusion 4 apply and that in the circumstances the respondent is not covered by the policy issued by the insurer in respect to the accident and damage resulting from the fire of March 22, 1950.

It appears that even the last operations of respondent's employees in servicing and adjusting the range in question took place an appreciable time prior to the occurrence of the fire and therefore under the terms of the policy were

completed. Furthermore it also appears that the Bentleys used the range from the time it was last serviced up to the happening of the fire, which fact under the language of the exclusion clause was proof that respondent's employees had completed that servicing job. Plainly it was the intent to exclude from coverage completed operations.

It is settled that an insurance contract such as the one before us must be read in its entirety in order to ascertain the meaning and intent of the parties and that each part should if possible be given meaning. *Princess Ring Co.* v. *Home Insurance Co.,* 52 R. I. 481; *Black* v. *Massachusetts Accident Co.,* 57 R. I. 237; *Laliberte* v. *Public Service Mutual Casualty Co.,* 69 R. I. 431. Moreover this court has had occasion to pass on the meaning of a policy similar to if not exactly like the one we are now considering. In *Baker* v. *Maryland Casualty Co.,* 73 R. I. 411, we held in substance that the policy therein did not cover liability for insured's expenses in defending an action for injuries brought by a person falling into a cesspool on her premises as the alleged result of insured's negligence in replacing a cover on the cesspool after cleaning it. There the accident occurred after insured had abandoned operations as completed according to the policy. We are of the opinion that the law there stated governs the instant case. See also *Kelly-Dempsey & Co.* v. *Century Indemnity Co.,* 77 F.2d 85, and *Smith* v. *United States Fidelity & Guaranty Co.,* 142 Neb. 321, for holdings of a similar nature.

On behalf of the appellants, the Bentleys, it is argued generally that the insurer is legally liable under the terms of the policy, either expressly or by implication, to cover their loss and also that by its conduct the insurer has estopped itself from contending that it is not liable. In support of that position they urge in a somewhat technical and involved argument that the additional exclusion clause numbered 4, hereinbefore set out, does not apply in the circumstances. This conclusion is reached by interpreting

other parts of the policy, namely, the definition of hazards and the insuring clauses in relation to such clause 4, in a certain manner so as to create an apparent inconsistency.

We have examined the policy in this respect and are not able to accept as sound the appellants' argument relating thereto. It is our opinion that the policy is not ambiguous and that said clause 4 is applicable and controlling in view of the facts herein. The operations in question had been completed prior to the fire within the ordinary and reasonable meaning of such clause and the rest of the policy. It is not unusual to have general hazards of a certain type covered by the insuring clause, subject, however, to specific exclusions subsequently stated. That fact does not in itself cause the policy to be ambiguous or inconsistent.

Further we fail to see how the appellants benefit by their argument in respect to the use of the term "N.O.C." used in the policy in connection with the hazards covered. From the evidence it appears that such letters merely mean "not otherwise classified" and relate only to rates. They have apparently no material or relevant bearing on the questions raised herein. In addition the fact that the title to the range, which was brought under a conditional sales agreement, remained in the respondent corporation is not in any way controlling here where the issue is the insurer's liability under a particular policy which contained no reference to such reservation of title. The case of *Eaton Realty Co.* v. *Petroleum Heat & Power Co.,* 77 R. I. 345, cited by appellants, which involved a question of pleading under facts clearly distinguishable from those herein is not in point. Finally we find nothing in the record to show that the insurer by its conduct has estopped itself from contending that it is not liable on the policy. No authority to support such a contention in like circumstances has been brought to our attention. It is therefore our judgment that the decision of the trial justice was without error.

The appeal is denied and dismissed, the decree appealed

from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edwards & Angell, Gerald W. Harrington, Edward F. Hindle,* for appellants.

*Francis V. Reynolds, Richard P. McMahon,* for respondent.