Alfred NIELSON, Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY, Defendant.

Civ. No. 758.

United States District Court
N. D. Iowa,
Central Division.

June 30, 1959.

Charles E. Cornwell, Mason City, Iowa, for plaintiff.

Paul Ahlers (Bannister, Carpenter, Ahlers & Cooney), Des Moines, Iowa, for defendant.

GRAVEN, District Judge.

The plaintiff, Alfred Nielson, an excavating contractor, was the insured under certain liability policies issued by the defendant. On September 7, 1955, the employees of the plaintiff, in excavating a ditch for a sewer on East State Street in Mason City, Cerro Gordo County, Iowa, unknowingly damaged a two inch gas main. The excavation was made pursuant to a contract between the plaintiff and a property owner who is not involved herein. The gas main was in the street under a franchise granted by the City of Mason City to Peoples' Gas & Electric Company. That Company was a subsidiary of the Kansas City Power & Light Company which transported natural gas in the gas main. The damage to the main caused a slow leak to develop in it. Leonard M. Easley was the owner and occupant of the nearby residence. On January 15, 1956, an explosion occurred on the Easley premises which was due to the leaking gas. Leonard M. Easley sustained personal injuries and property damage, and his wife, Elaine Easley, sustained personal injuries as a result of the explosion. Leonard M. Easley and Elaine Easley each brought an action against Alfred Nielson and the Kansas City Power & Light Company in the District Court of Iowa in and for Cerro Gordo County. The actions were based upon negligence on the part of the plaintiff in connection with the gas main. Alfred Nielson called upon the defendant, The Travelers Indemnity Company, to defend the actions. It denied liability and refused to defend the actions. Before either case was reached for trial the Easleys executed covenants not to sue the Kansas City Power & Light Company. The Leonard M. Easley claim came on for trial with jury. The jury returned a verdict for a substantial amount in favor of Leonard M. Easley. Alfred Nielson then settled the judgment against him by the payment of an amount slightly less than the amount of the judgment. Later and before the claim of Elaine Easley was reached for trial, Alfred Nielson settled the claim of Elaine Easley. Alfred Nielson then instituted an action in the District Court of Iowa in and for Cerro Gordo County to recover from the defendant, The Travelers Indemnity Company, the amounts paid by him in settlement of the Easley claims and the amount of legal expense incurred by him in connection therewith. The defendant removed to this Court.

The plaintiff was and is a citizen of the State of Iowa, residing at Mason City. The defendant is a Connecticut corporation. Jurisdiction is based upon diversity of citizenship. The applicable law is that of the State of Iowa. The trial was to the Court.

For a great many years prior to the time here in question, the plaintiff had been engaged in the contracting business as an independent contractor. During the years of 1954, 1955, and 1956 his main and principal activity was excavation work. On occasion he would take on a demolition job and on occasion would in connection with his excavation work build a retaining wall or lay a line of sewer pipe or put in a culvert. For many years The Ralph Lloyd Jones Company has conducted an insurance agency at Mason City. The Ralph Lloyd Jones Company is a corporation. Its sole stockholders are Ralph Lloyd Jones and R. O. Albrecht. They are the executive officers of the agency and men of experience in the insurance field. For many years the corporation has been the agent of the defendant in connection with liability policies issued by it.

At least as early as 1941 all of the liability insurance of the plaintiff was handled by The Ralph Lloyd Jones Company and was written in the defendant company or an affiliate of it. The policies were written on an annual basis. During the latter years the policies were renewed as of January 1st of each year. Under the policies the plaintiff paid an advance premium at the time the policy was renewed, subject to an audit of his books and records by representatives of the defendant at or near the end of the year. The audit might disclose that the plaintiff owed an additional amount as a premium or it might disclose that he was entitled to a refund.

The plaintiff declared on two policies. The first policy is designated as Comprehensive Liability Policy KSL 3838943. It is dated January 4, 1955. The stated policy period is from January 1, 1955, to January 1, 1956. It is referred to by the parties as the 1955 policy. The second policy is designated as Comprehensive Liability Policy KSL 5236957. It is dated December 8, 1955. The stated policy period is from January 1, 1956, to January 1, 1957. It is referred to by the parties as the 1956 policy.

The damaging of the gas main occurred on September 7, 1955, during the stated policy period of the first policy. The explosion which caused the damage to the Easleys occurred on January 15, 1956, during the stated policy period of the second policy. In their briefs and arguments the parties argued as to which policy is involved. It seems well settled that where an insured does a negligent act and there is a gap in time between the doing of such act and the damage caused thereby the insured's liability arises at the time the damage is done. Remmer v. Glens Falls Indemnity Co., 1956, 140 Cal.App.2d 84, 295 P.2d 19, 57 A.L.R.2d 1379. In the annotation to that case numerous cases are cited which are in accord with the rule stated. It seems clear that when damage is sustained as the result of a prior negligent act there is a union of cause and effect resulting in a consummated accident. Berger Bros. Electric Motors, Inc. v. New Amsterdam Casualty Co., 1944, 293 N.Y. 523, 58 N.E.2d 717, 718, 156 A.L.R. 1281. The length of time intervening between the doing of an alleged negligent act and the sustaining of damage allegedly caused by such act is of importance on the question of proximate cause. The length of time intervening between the doing of a negligent act and the damage caused by it is of importance in a situation where there are different liability insurers on the two occasions, or where the form of the liability policy is different on the two occasions. The length of time which may separate the two occasions is strikingly illustrated by the case of Pryor v. Lee C. Moore Corp., 10 Cir., 1959, 262 F.2d 673, certiorari denied 1959, 79 S.Ct. 1284. In that case an employee of an oil well driller was injured by a claimed defect in the manufacture of an oil derrick which had been manu-

factured fifteen years before the mishap. The employee brought an action against the manufacturer for its claimed negligence. The trial court directed a verdict in favor of the manufacturer. The Court of Appeals reversed. It held that the question of whether the claimed negligence of the manufacturer was the cause of the employee's injuries was one for the jury.

In the present case the defendant was the liability insurer both at the time of the doing of the negligent act and at the time damage was sustained because of such act. It is the holding of the Court that the liability of the defendant to the plaintiff must rest upon its Comprehensive Liability Policy KSL 5236957, the stated policy period of which was from January 1, 1956, to January 1, 1957, and which was in effect at the time of the explosion on January 15, 1956. The first page of that policy is headed

"Declarations Comprehensive Liability Policy Number KSL 5236957."

It contains blanks to be filled in as to coverages and premiums. It is followed by four printed pages of stock provisions. There is attached to the policy thirteen endorsements and two sheets designated as Declarations Schedule 1 and Schedule 2.

At the time the policy was originally issued and at the time of the explosion, there was attached to the policy endorsement No. 3998 which is entitled "Exclusion of Products Hazard." The pertinent portion of that endorsement provides as follows:

"It is agreed that the policy does not apply to the products hazard as defined therein. * * *."

The definition of products hazard appears on the third page of the policy among the printed provisions. That provision is as follows:

"3. (g)(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if

the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

It will be noted that subparagraph (2) of the products hazard provision includes "operations, if the accident occurs after such operations have been completed * * *." In this case the plaintiff completed the excavation he had contracted to do shortly after the damage had been done to the gas main. It is the claim of the defendant that since the explosion occurred after the plaintiff had completed the excavating liability growing out

of that explosion was without the coverage of the policy.

It will also be noted that the last part of subparagraph (2) provides that "operations for which the classification stated in division (a) of the declarations specifically includes completed operations." In division (a) of the declarations referred to there appears in typewriting the following:

"Sewer Construction—all operations (tunneling other than at street crossings to be separately rated)."

■ It is the claim of the plaintiff the defendant's liability for damages caused by the explosion was not excluded by the terms of the policy. He asks in the alternative for reformation of the policy. It is also the claim of the plaintiff that the defendant is estopped to assert that liability growing out of the explosion was not within the coverage of the policy. In view of the claims of the parties it seems desirable to give consideration to some phases of products liability insurance. In an article, Products Liability Insurance, by Suel O. Arnold, 25 Insurance Counsel Journal 42 (January 1958), it is stated (p. 43) that there are in general five types of insurance policies relating to products liability coverage, to wit: Comprehensive Liability policies, Manufacturers' and Contractors' Liability policies, Owners', Landlords' and Tenants' policies, Schedule Liability policies, and Garage Liability policies. The importance of a provision in a policy including or excluding products liability has been increasingly of greater importance. This increasing importance has been due to the development of the rule in the case of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. See Liberty Mutual Insurance Co. v. Hercules Powder Co., 3 Cir., 1955, 224 F.2d 293, 54 A.L.R.2d 513. Prior to the MacPherson rule, a vendor of a product could be liable to his vendee for negligence in connection with the product and also for breach of warranty. However, under the rule of the MacPherson case, liability for negligence on the part of the manufacturer or vendor in connection with a product was extended to third parties. There has also been an expansion of the warranty liability of a manufacturer or vendor of a product to third persons. For an excellent discussion of those developments, see James, Products Liability, 34 Texas Law Review 44, and 34 Texas Law Review 192 (1955); Strict Liability of Manufacturers: A Symposium, 24 Tennessee Law Review 923 (1957), and Gillam, Products Liability In A Nutshell, 37 Oregon Law Review 119 (1958). This last article cites what would appear to be a complete list of law review material on the subject. It has long been regarded as the general rule that an independent contractor is relieved of responsibility in connection with a structure erected by him after he has completed it and it has been accepted by the owner. However, liability of such a contractor for injuries and other damage sustained subsequent to completion and acceptance has been and is being expanded. See Hale v. Depaoli, 1948, 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 183, and cases cited in the annotation to that case. A contractor excavating for a sewer who damages a gas main is liable for the loss sustained by third persons from a subsequent gas explosion even though the party for whom the sewer was being constructed had accepted the sewer prior to the explosion. King v. Mason, La.App. 1957, 95 So.2d 705, affirmed 1958, 234 La. 299, 99 So.2d 117; Kendrick v. Mason, 1958, 234 La. 271, 99 So.2d 108.

Liability on the part of the contractor which arises after he has completed his contract and the subject matter of it is accepted by the other party to the contract is frequently referred to as completed operations liability. An independent contractor who erects a structure under a contract with the owner is not commonly regarded as being the manufacturer or vendor of a product. In 13 A.L.R.2d 195, it is stated that it is sometimes difficult to draw a line between articles manufactured and structures erected or built. The cases cited in the annotation 13 A.L.R.2d 191 indicate that

there has been a tendency on the part of the courts to apply somewhat similar rules to both. There are also situations where an independent contractor furnishes services which do not involve the supplying of a product or material. Frequently the damage resulting from negligence of such person in connection therewith does not occur until some time after the services have been completed.

Liability policies relating to products hazard in general contain the same standard provision. That form is used in the policy here under consideration. One division of the standard provision applies to "goods or products manufactured, sold, handled or distributed * * * if the accident occurs after possession of such goods or products has been relinquished to others * * *." Under that division liability for an accident in connection with goods and products occurring after the transaction had been completed by relinquishment of possession would be covered. However, another division of the products hazard provision is entitled, "Operations" and has to do with "completed operations." The standard products hazard provision contains a number of words which give rise to some difficulty. It contains the troublesome word "accident." It also contains the word "operation" and the words "completed operations" which require definition. The provision partially defines "operations" in a negative sort of way by stating that certain items shall not be deemed "operations" within the scope of the provision. In that connection it refers back to the declarations of coverage in the declarations portion of the policy. Some of the comprehensive liability policies in connection with products hazard liability provide coverage on an occurrence basis. Some provide coverage on an occurrence basis for bodily injuries but not for property damage. In the policy here involved the word "accident" is used in the declarations relating to coverage and in the products hazard provision just referred to. Endorsement No. 1721 attached to the policy provides, in part, as follows:

"Occurrence
"(Bodily Injury)
"The word 'accident' wherever it appears in other parts of the policy when applicable to such coverage is amended to read 'occurrence.' The word 'Occurrence' means an accident or continuous or repeated exposure to conditions which results in bodily injury, sickness or disease, including death at any time resulting therefrom, during the policy period. All damages arising out of such exposure to substantially the same general conditions existing at or emanating from each premises location shall be considered as arising out of one occurrence."

In the present case the explosion which occurred was clearly an "accident" and the "occurrence" endorsement would not seem to be of legal significance.

The law in the field of products liability has been in the state of formation and change. Liability growing out of and connected with the manufacture and sale of products has a multitude of phases and the situations under which a manufacturer or vendor may be held to liability are many and complex. The result has been that liability policies having to do with products liability are usually quite complex, containing not only many stock printed provisions but many endorsements which contain a multitude of exclusions and inclusions, many definitions, and numerous cross references. One writer in the field of products liability insurance states that the impression has been created among the members of the bench and bar that a products liability policy is comprehensible only by experts. Arnold, Products Liability Insurance, 25 Insurance Counsel Journal 42 (1958). The products hazard provision does not usually give rise to unusual difficulty as to liability insurance coverage where there is only involved the manufacture or sale of what is commonly known and regarded as a product. Where the transaction involves a contract between an independent contractor and an owner for the erection

of a structure and the contractor furnishes material for the structure, greater difficulty is encountered as to liability insurance coverage under the products hazard provision. However, when the contract involves a contract between an independent contractor and an owner for the rendering of services which do not involve the furnishing or supplying of any product or material, the question of liability insurance coverage under the products hazard provision becomes most difficult.

The case of Ocean Accident & Guarantee Corp. v. Aconomy Erectors, 7 Cir., 1955, 224 F.2d 242, involved the question of the insurer's liability under the completed operations division of the standard products hazard provision. The Court stated (at page 247):

"* * * The true meaning of the policy is difficult to determine. An examination of it involves a physical effort of no mean proportions. Starting out with three printed pages, the first of which consists largely of a form which is filled in on a typewriter, the reader is confronted also with six physically attached supplements, or riders, inconveniently assorted into different sizes. If he is possessed of reasonable physical dexterity, coupled with average mental capacity, he may then attempt to integrate and harmonize the dubious meanings to be found in this not inconsiderable package. A confused attempt to set forth an insuring agreement is later assailed by such a bewildering array of exclusions, definitions and conditions, that the result is confounding almost to the point of untelligibleness [sic]. To describe the policy as ambiguous is a substantial understatement. * *."

In 1954 the plaintiff noticed that his 1954 liability policy had accumulated an unusually large number of endorsements and he became concerned about the matter of liability coverage. His concern had been stimulated by the fact that some time before a small claim had been made against him which was not within the coverage of the policy. The plaintiff counselled with Mr. Albrecht about the matter of his liability. He informed the latter that he wanted to be sure all of his operations were covered liability-wise. He informed Mr. Albrecht that much of his sewer excavation had to be done in the city streets and he was concerned about liability in that connection. The plaintiff had noticed the provisions in the hazards product provision and made inquiry as to their effect on his liability coverage. Mr. Albrecht informed him that since the amount of material involved in his operations was negligible that there was no reason for him to have the coverage that would be afforded by that provision. The plaintiff continued to be concerned about his liability coverage and in the forepart of 1955 he took his current liability policy to his attorney, George S. Marty, for examination. Mr. Marty, after going over the policy and endorsements, informed the plaintiff that the policy was so complicated that he would not be able to give him an opinion as to the liability coverage afforded by it. Mr. Marty suggested that a conference be had with either Mr. Jones or Mr. Albrecht. The plaintiff, Mr. Albrecht, and Mr. Marty then had a conference. In that conference there was discussed, among other matters, the coverage set forth in the Declaration and the relation of the products hazard provision to that coverage. Mr. Albrecht was of the view that since the plaintiff handled very little material the exceptions contained in the products hazard provision did not affect the situation. The plaintiff also discussed the products hazard provision with Mr. Jones. Mr. Jones was of the view that since the plaintiff handled very little material the provision was not applicable to him.

In December, 1955, it became time to renew the plaintiff's liability policy with the defendant. On or about December 9, 1955, the plaintiff called Mr. Marty on the telephone and told him that Mr. Albrecht had called about the 1956 policy

and that he had requested that the policy be made available for Mr. Marty's examination as to coverage so that he could be sure all of his operations were covered liability-wise. The proposed policy was brought to Mr. Marty's office about December 28, 1955. On January 6, 1956, the plaintiff had not as yet accepted the 1956 policy and the explosion had not as yet occurred. On that date Mr. Marty conferred with the plaintiff. Mr. Marty informed the plaintiff that the policy was so complicated that he could not make "heads or tails" as to the policy and suggested that Mr. Albrecht be called over for a conference. Mr. Albrecht came over and the terms of the policy were discussed. On January 7, 1956, Mr. Albrecht wrote the defendant, in part, as follows:

"It looks as though we might be able to hold this business after all. I had a discussion yesterday with the attorney and everything seems to be in order with two exceptions.

"They would like to have a classification or some sort of an endorsement on the policy showing that the equipment such as cranes, bulldozers, and draglines, is covered while they are leased to others. The only coverage they are interested in is the coverage for Alfred Nielson while Mr. Nielson rents equipment to others and *not* for the man who does the renting. If you can attach such an endorsement for this classification would you please do so showing payroll on an if any basis.

"I should like to have information concerning the cost for products liability which in this case is a completed operation. Mr. Nielson does not sell any particular product but will at times put in a sewer or a retaining wall or a culvert. Your giving me this information will put me in the position to make the final placement of the business."

The explosion, as heretofore noted, occurred on January 15, 1956. No changes had been made in the policy up to that time and at the time the explosion oc-

curred the products exclusion provision was applicable. Promptly following the explosion the plaintiff gave notice of it and the loss occasioned thereby to The Ralph Lloyd Jones Company. Mr. Albrecht informed the plaintiff that the loss was covered. Mr. Jones was of the same view. Shortly after January 15, 1956, Don O. Phalsgraph, an attorney and district adjuster for the defendant who had to do with claim administration in the defendant's branch office at Des Moines, Iowa, conferred with the plaintiff and Mr. Marty. Mr. Phalsgraph informed them that the plaintiff was covered and that he had nothing to worry about. However, later Mr. Phalsgraph informed the plaintiff and The Ralph Lloyd Jones Company by letter that the Des Moines office was not in accord with him as to the loss being covered and that liability was denied. He stated that it was the view of the Des Moines office that liability for the loss was excluded under the subdivision of the products hazard provision relating to completed operations.

Following the explosion there was discussion between Mr. Albrecht, the plaintiff, and Mr. Marty as to the matter of putting an endorsement on the 1956 policy eliminating the products hazard exclusion. On February 2, 1956, endorsement No. 1720 was attached to the policy eliminating the products hazard exclusion. The endorsement recites that it was "Effective from Jan. 24, 1956." It is the claim of the plaintiff that the endorsement was to relate back to January 1, 1956. The evidence will not support a finding that the endorsement did relate back to January 1, 1956. Therefore, the liability coverage of the plaintiff as to the explosion is governed by the terms of the policy as of January 15, 1956, when the products hazard exclusion was a part of the policy.

Leonard M. Easley and Elaine Easley commenced actions against the defendant in the District Court of Iowa in and for Cerro Gordo County. As heretofore noted, the defendant was tendered the defense of these actions and refused it.

The plaintiff employed attorneys to defend the actions. The case of Leonard M. Easley proceeded to trial with jury and resulted in a verdict against the defendant, which judgment was settled on August 15, 1958, for the sum of $6,-900 and $301.85 costs. On October 22, 1958, the defendant settled the claim of Elaine Easley for the sum of $1,650 and $37.15 costs. The defendant does not contest the reasonableness of the settlements. The plaintiff paid Charles E. Cornwell for legal services and expenses in connection with the defense of the claims the sum of $1,558.43. The reasonableness of that item is not contested by the defendant. The plaintiff paid George S. Marty for legal services and expenses in connection with the claims the sum of $1,519.02. The plaintiff paid David J. Butler for legal services and expenses in connection with the claims the sum of $354.58. The reasonableness of these last two items is contested by the defendant. The total amount paid by the plaintiff for legal services and expenses in connection with the defense of the claims was $3,432.03. The amount of recovery asked by the plaintiff in his recast complaint for such legal services and expenses is the sum of $3,389.59.

There has been an increasing amount of cases involving products liability insurance, a number of which have to do with a clause excluding "products liability" from coverage. See annotations 45 A.L.R.2d 994 and 54 A.L.R.2d 518. See also annotation on risks covered by contractor's liability policy, 156 A.L.R. 1285.

It is the claim of the defendant that under the pertinent portions of the policy its liability for the loss resulting from the explosion is plainly and unambiguously excluded by the completed operations subdivision of the products hazard provision. It is the claim of the plaintiff that under the pertinent portions of the policy the liability of the defendant for the loss resulting from the explosion plainly and unambiguously appears. In the alternative the plaintiff asserts that

the pertinent portions are ambiguous as to the "completed operations" exclusion contained in a subdivision of the products hazard provision of the policy and that such ambiguity is to be resolved in his favor. In the further alternative the plaintiff asks that it be held that the defendant is estopped to assert non-coverage as to the liability in question. In the further alternative the plaintiff asks for reformation of the policy.

It was heretofore noted that where an independent contractor is engaged in activities which do not involve the supplying of a product or material, the provisions of a comprehensive liability policy held by him relating to the "products hazard" exclusion give rise to troublesome questions. There are a number of cases in which the question is raised as to the scope of liability coverage where the insured is engaged in excavating.

In the case of Standard Accident Ins. Co. v. Harrison-Wright Co., 1935, 207 N.C. 661, 178 S.E. 235, the insured under a liability policy was engaged in the construction of a sewer. In connection with that construction he did blasting which caused damage to several persons. His liability insurer claimed that liability growing out of the blasting was not within the coverage of the policy. In the schedule of the policy there appeared the following:

"Description of Business Operations to be Insured: *Sewer Construction—all operations—excluding tunnelling except at street crossings.*"

The italicized words were in typewriting. The printed portion of the policy contained the following:

" 'Exclusions II.    *    *    *    (3) This Certificate does not cover any loss on account of accidents due to or caused by—(naming many) (i) an explosion of any character.' "

It was the claim of the insurer that loss due to blasting was excluded by that provision. The Court held that it was not.

The Court stated (at page 238 of 178 S.E.):

"The defendant wanted insurance to protect it in *sewer construction—all operations*; What is the meaning of *all*? Webster's New International Dictionary defines the word as follows: 'The entire thing; everything included or concerned; the aggregate; the whole; totality.'

"Then is added 'excluding tunnelling, except at street crossings.' If the insured and the insurer had wanted a further exclusion, how easily there could have been added 'an explosion of any character.' The typed language correctly described the business operations for which defendant was insured.

"The question is whether these words, 'sewer construction—all operations,' which were inserted with the typewriter and written into the policy, were words which the parties chose as directly appropriate, or whether certain printed words in other parts of the contract were to be considered as overruling and setting at naught this clear language. We think not."

The Court further stated (at page 239 of 178 S.E.) that the matter of fixing the premium for the operations covered was with the company. The Court in its opinion referred to the rule that where a contract is partly in printing and partly in writing and there is a conflict between the two the writing will prevail. The Court stated (at page 239 of 178 S.E.):

"We think the language controlling and predominant: 'Sewer Construction—all operations—excluding tunnelling except at street crossings.' * * *."

The cases of King v. Mason, La.App. 1957, 95 So.2d 705, affirmed 1958, 234 La. 299, 99 So.2d 117, and Kendrick v. Mason, 1958, 234 La. 271, 99 So.2d 108, arose out of the same mishap. One Mason entered into a contract with a municipality for construction of a sewer. The contract involved excavating ditches for the sewer, laying the sewer pipe, and filling the ditches. During the performance of the contract he unknowingly damaged a gas main. On December 14, 1954, the municipality accepted the project. On January 27, 1955, a gas explosion occurred in the vicinity of the damaged gas main causing personal injuries to one King and extensive property damage to one Kendrick. The United States Fidelity & Guaranty Company was Mason's insurance liability carrier in connection with the contract. The policy was a comprehensive liability type of policy. The policy contained a products liability endorsement excluding products hazard as defined in the policy. The products hazard provision in that policy is virtually identical with the one involved in the present case. The insurer claimed that liability on its part under the policy was excluded by the "completed operations" subdivision of the products hazard provision. King and Kendrick instituted separate actions. Mason and his insurance carrier and others were the defendants in those actions. Louisiana has what is known as a direct-action statute under which an insurance carrier may be joined as a defendant in an action against its insured. The trial court held that the insurer was liable for the loss. An appeal was taken to the Louisiana Court of Appeals. That Court affirmed. In reference to the contention of the insurer that the products hazard provision excluded coverage, the Louisiana Court of Appeals stated (at pages 718, 719 of 95 So.2d):

"The first part of this definition is conceded to apply or refer to the warranty of goods or manufactured products, but it is argued that the second part of the definition has reference to contractors. We do not think the language of the contract and the endorsements and documents attached thereto warrant the conclusion urged as to this part of the definition; at least, the language used leaves the meaning vague, obscure and indefinite and it.

cannot be said, on this score, the policy is free from ambiguity.

\*   \*   \*   \*   \*   \*

"The defendant Mason handled no products, meaning 'goods or products' manufactured, sold or distributed. He, therefore, did not want or need the coverage. The reference to the accident occurring after the operations have been completed and abandoned at or away from premises owned, rented or controlled by the insured means nothing more than the accidents occurring by reason of handling of products or goods, after any agreement to sell, rent or deliver the goods has been completed or the goods have been abandoned.

"Nowhere does it appear that any of these exclusions or refers to contractors who have had no products for sale but have performed a contract for the installation of a public utility or even the erection of any structure, public or private. \* \* \*.

\*   \*   \*   \*   \*   \*

"In final conclusion, if it could not be positively asserted, the exclusions in the policy and the endorsements attached thereto in the instant case were without reference to a contractor, then, of a certainty, they are vague and indefinite and ambiguous, and under the well settled jurisprudence must be . construed against the insurer. \* \* \*."

The decision of the Louisiana Court of Appeals was affirmed by the Louisiana Supreme Court, 1958, 234 La. 299, 99 So.2d 117. In the Kendrick case the trial court held that the insurer was liable for the loss. On appeal the Supreme Court of Louisiana affirmed. Kendrick v. Mason, 1958, 234 La. 271, 99 So.2d 108. That Court stated (at page 114 of 99 So.2d):

"It must be observed that neither the accident nor the damage resulting therefrom was caused by the sewer system itself, that is, the finished product, but was the direct result of the tort committed by Mason during the performance of his contract and during the life and term of the policy issued by the insurer.

"The insurer contends that Mason purchased only ordinary operations coverage, paying no premium for products or completed operations protection; that his coverage protected him only as against accidents which occurred during the progress of the work and that accidents occurring after the completion of the work were not covered. In other words, the insurer contends that the dividing line between liability and nonliability under the policy is the moment of completion or abandonment of the work covered.

"The insurer further contends that accidents occurring during the progress of the work and accidents happening after completion of the work are distinctively different risks, carrying separate and distinct premium rates, and that an accident occurring during the course of the work covered is an operation risk and one occurring after completion is a products or completed operations risk for which Mason is not covered, having declined same."

That Court further stated (at pages 116, 117 of 99 So.2d):

"It is significant that the policy contract does not recite that any of these exclusions pertains to or refers to contractors who have no products for sale but who have performed a contract for the installation of a public utility, as in the instant case, or even the erection of any structure, public or private; whereas the policy does specifically recite that the assured, C. N. Mason, is a sewer and water main contractor. By no means of interpretation known to us can it be positively asserted that the exclusions in the policy and the endorsements attached thereto referred to contractors, and we deem it the fundamental duty of the insurer to express

clearly the limitations of its obligation.

\*   \*   \*   \*   \*   \*

"\* \* \* In the instant case the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligation therein. An analysis of the exclusion and exceptions therein clearly demonstrates an ambiguity and vagueness which under our well settled jurisprudence must be construed against the insurer. \* \* \*.

"We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him. The policy was issued to fully protect Mason against liability for acts of negligence committed by him during his performance of the contract. The tort which was the proximate cause of the damages sustained by plaintiff was in fact and in law committed during the performance of the construction contract. Both the accident and the injuries resulting therefrom were brought about not from the completed and accepted sewer system but from the direct result of the acts of negligence committed during its construction. The policy covering said accidents for which premiums were charged was then in full force and effect; and the conclusion is inescapable that the insurer is therefore liable in solido with its insured, Mason."

The case of McAllister v. Century Indemnity Co. of Hartford, 1953, 24 N.J. Super. 289, 94 A.2d 345, is of interest. The insured under a liability policy was an excavator. He made an excavation for an oil tank. A month after he had finished the excavation a person sustained injuries due to a depression caused by the sinking of the ground. The liability insurer claimed that the loss was without the coverage of the policy. The policy contained numerous provisions with cross references to completed operations in connection with "Premise—operations" hazard and "Products" hazard. The Court stated (at page 347 of 94 A.2d):

"We are satisfied, however, that an excavator's liability insurance is not offered under the heading 'Products.' "

The Court further stated on the same page:

"The obvious object of the plaintiff in procuring this policy was indemnity against liability on tort claims growing from his operations as an excavator. The company seems, in general, to have intended by the policy to afford him such indemnity for a limited period, the policy year. Except as particular provisions of the policy so curtail its scope that an ordinarily intelligent man would understand that the policy does not cover certain risks which come within its general scope —with that exception, the policy should be construed to cover all liability for accidents arising from plaintiff's operations, whether the accidents happened before or after the excavation job was finished. We agree with the trial court that the company is liable on its policy in respect to the claim that was asserted against plaintiff."

An appeal was taken to the Supreme Court of New Jersey, 1953, 12 N.J. 395, 97 A.2d 160. That Court affirmed on the basis of the opinion below.

In the case of Heyward v. American Casualty Co. of Reading, Pa., D.C.1955, 129 F.Supp. 4, the insured was a plumbing and heating contractor who as a part of a contract constructed underground gas lines leading into a housing project. Subsequently an explosion occurred in the housing project causing

personal injuries to one of the occupants. The insured's comprehensive liability policy contained virtually the same standard products hazard clause that is contained in the policy involved in this case. The insurer denied liability under the subdivision of the products hazard exclusion clause relating to completed operations. The insured brought an action for a declaratory judgment. The insurer moved for summary judgment based on the products hazard exclusion. The motion was denied. The Court stated (at page 9):

"'Products Liability', to the average person, refers to liability arising out of the use of, or existence of any condition in goods or products manufactured, sold, handled or distributed by the insured. The suit in the State Court involved no such liability, but is based on alleged negligent construction by the plaintiff.

"An interpretation which entirely neutralizes one provision of the policy should not be adopted if the contract is susceptible of one which gives effect to all of its provisions and is consistent with the general intent. Seeming contradictions or conflicts should be harmonized if reasonably possible. 29 Amer.Jur., page 176.

"After a careful analysis of all the relevant provisions of the policy, I must conclude that a plumbing and heating contractor's comprehensive liability coverage is not covered under the heading 'Products', and that the policy here involved should be construed to cover the liability for accidents arising from plaintiff's operations whether the accident happened before or after the housing project was completed."

In the case of Hercules Co., Inc. v. Royal Indemnity Co., D.C.1959, 171 F. Supp. 746, the insured was engaged in the work of cleaning out holds of ships. During the course of cleaning out the hold of a ship owned by the Weyerhaeuser Steamship Company the insured allowed rags to get into a suction line. The presence of the rags in the suction line subsequently caused extensive property damage to the Steamship Company. It brought an action against the insured for such damage. The insured's comprehensive liability policy contained a products hazard clause similar to that contained in the policy in the present case. The insurer denied liability under that clause. The insured brought an action against the insurer for the loss. Judgment was rendered against the insurer. The Court stated (at page 748):

"The defendant maintains the insurance policy excluded claims arising from 'completed work.' The defendant relies upon two provisions of the insurance policy in support of this contention. One is that on the face of the policy there was the phrase 'Products (Including Completed operations) Excluded.' There is no doubt from this provision of the policy that the insurance did not cover products. However, plaintiff did not sell products; it performed services. The exclusion of a products liability, the premium for which under the policy would have been a certain percentage of sales, would certainly not have indicated to the average purchaser of insurance that there was an exclusion for liability for negligence in connection with services rendered by it. The claim of the Weyerhaeuser Steamship Company was not for negligence in connection with products sold by the plaintiff, but rather was concerned with negligence in connection with work done by the plaintiff in connection with services rendered in the cleaning out of the hold of the ship, which was an item specifically covered by the policy. The exclusion which relates to 'products' manufactured or distributed by the insured, would not be an exclusion which would relate to services performed, out of which services the accident arose. No businessman reading this policy could reasonably assume from the rather ambiguous language used

therein that the insured was not protected against the natural consequence of any negligence on its part in the performance of its services which constituted its regular business. If there is any ambiguity in the policy it must be construed against the insurance company."

In the present case, as heretofore noted, the following words were typewritten in the Declarations of the policy: "Sewer Construction—all operations (tunnelling other than street crossings to be separately rated)." There is a rule of construction referred to by some courts that where there is a conflict in a policy between the written portions of a policy and the printed provisions of a policy the former shall prevail. Biwabik Concrete Aggregate Co. v. United States Fidelity & Guaranty Co., 1939, 206 Minn. 239, 288 N.W. 394. In that case typewritten words in the classification of operations relating to coverage were in conflict with the exclusion contained in the printed portion of the policy. The Court held that the typewritten words prevailed. See also Allied Mutual Casualty Co. v. Askerud, Minn.1959, 94 N.W. 2d 534, in which it was held in connection with a liability policy that where specific consideration of the particular insured's risks are evidenced by a typed declaration of risks to be covered the typed declaration should prevail over a form exclusion couched in general terms.

Section 622.21, Code of Iowa 1958, I.C.A., provides as follows:

"When an instrument consists partly of written and partly of printed form, the former controls the latter, if the two are inconsistent."

The Iowa Supreme Court has not referred to that section in connection with the construction of insurance policies.

The rule of construction relating to situations where there is a conflict between the written and printed provisions of an instrument is of less significance in the construction of insurance policies than it is in the case of other instruments because of certain other general rules of construction followed by the courts, including the Iowa Supreme Court, in relation to insurance policies. In the case of West v. Hartford Fire Insurance Co., 1957, 248 Iowa 993, 83 N.W.2d 465, at pages 468, 469, the Court stated:

"It is true, as a general rule, that all doubts in construing insurance policies are resolved against the insurance company which used the language in preparing the policy. Struble v. Square Deal Insurance Co., 237 Iowa 1155, 24 N.W.2d 441, and cases cited therein. It is also true generally that the language of exceptions and conditions must be clear, and the party offering the instrument is responsible for all doubts in the language. Robinson v. Hawkeye Commercial Men's Ass'n, 186 Iowa 759, 171 N.W. 118; Crowe v. Merchants' Life & Casualty Co., 202 Iowa 43, 209 N.W. 406."

The claimed pertinent provisions of the policy involved in the present case will again be noted. The products exclusion endorsement which is Number 3998 refers to products as defined in the policy. The printed portion of the policy contains a section which is designated "Conditions." Paragraph 3 of that section is entitled "Definitions." Subparagraph (g) of that paragraph is entitled "Products Hazard." Subsection (2) of that subparagraph is entitled "operations." That subdivision contains the provision relating to completed operations. However, that subdivision has a number of subdivisions, among which is subdivision (d) which provides that the exclusion relating to completed operations is not applicable to operations for which the classification stated in division (a) of the declarations specifically includes completed operations. Division (a) is the Declarations Schedule of the policy. In Declarations Schedule 2 the following appears above a column entitled "Description of Hazards."

"Insurance is afforded with respect to each of the hazards desig-

nated below unless the statement 'Coverage Excluded' is entered with respect thereto; * * *."

In the column entitled "Description of Hazards," the following appears in typewriting:

"Sewer Construction—all operations (tunneling other than at street crossings to be separately rated)."

In other columns the premium rates for the sewer construction hazards are typed in.

The cases heretofore discussed indicate that where an independent contractor is engaged in an activity in which no products or materials are used and coverage for such activity is purportedly given as to hazards in connection therewith in the declarations portion of his comprehensive liability policy, and in the printed portion of the policy there is a products hazard provision which contains a subdivision relating to the matter of completed operations, the situation is one which may give rise to doubt and ambiguity on the question of coverage. In this case, as heretofore noted, it is the claim of the defendant that its liability for the loss in question is plainly and unambiguously excluded, and it is the contention of the plaintiff that liability for the loss in question is plainly and unambiguously covered. The Court is of the view that the situation is not as claimed either by the defendant or the plaintiff.

The Court is of the view and finds under the circumstances in this case the terms of the policy are ambiguous as to the matter of coverage here involved and leaves that matter in doubt. Under the Iowa law such doubt and ambiguity are to be resolved in favor of the insured.

The fact that Mr. Jones, Mr. Albrecht, and Mr. Phalsgraph, all of whom were men of skill and experience in the insurance field, put an interpretation on the provisions of the policy which is contrary to the interpretation now placed thereon by the defendant is indicative that the matter of coverage as to liability for the loss in question is not free from doubt and ambiguity. The statement just made does not imply that the interpretations of Mr. Jones, Mr. Albrecht, or Mr. Phalsgraph were binding on the defendant, at least so far as this phase of the case is concerned. It does imply that the terms of the policy were not plainly comprehensible to those in the insurance field as to the matter of coverage for a loss such as is here involved.

It is the holding of the Court that liability for the loss occasioned by the explosion on January 15, 1956, was within the coverage of the policy and that the defendant is obligated to pay the plaintiff the amounts paid by him in settlement of the Easley claims and the fair and reasonable value of the amounts expended by him for legal services and expenses in connection with those claims.

It is the finding of the Court that the amounts paid by the plaintiff to George S. Marty and David J. Butler for legal services and expenses in connection with the defense of the claims of Leonard M. Easley and Elaine Easley were fair and reasonable.

Because of the holding of the Court as to the coverage of the policy, the question as to reformation and the question as to estoppel are not reached. A recent and leading Iowa case on the reforming of an insurance policy is the case of Quinn v. Mutual Health & Acc. Ass'n, 1952, 244 Iowa 6, 55 N.W.2d 546. For a fairly recent case in this Circuit involving the matter of completed operations under the products hazard provision of an insurance policy but involving a different question than here involved, see Larsen v. General Cas. Co., D.C.Minn.1951, 99 F.Supp. 300, affirmed 8 Cir., 1952, 196 F.2d 170.

The defendant cites and relies upon the following cases in support of its claim that the completed operations provision of the products hazard exclusion plainly, validly, and unambiguously excludes coverage in this case: Crook v. Kalamazoo Sales & Service, Inc., 1954, 82 R.I. 387, 110 A.2d 266; New Amsterdam Cas. Co. v. Ellzey, 5 Cir., 1957, 240 F.2d 618; Berger Bros. Electric Motors v. New Amsterdam Cas. Co., 1944, 293

N.Y. 523, 58 N.E.2d 717, 156 A.L.R. 1281; Foster Trailer Co. v. United States Fidelity & Guaranty Co., 1950, 190 Tenn. 181, 228 S.W.2d 107; Daniel v. New Amsterdam Cas. Co., 1942, 221 N.C. 75, 18 S.E.2d 819; Standard Accident Ins. Co. v. Roberts, 8 Cir., 1942, 132 F.2d 794; Hutchinson Gas Co. v. Phoenix Indemnity Co., 1939, 206 Minn. 257, 288 N.W. 847; Smith v. United States Fidelity & Guaranty Co., 1942, 142 Neb. 321, 6 N.W.2d 81; Pan American Ins. Co. v. Cooper Butane Co., Tex. 1957, 300 S.W.2d 651; Butler v. United States Fidelity & Guaranty Co., 1955, 197 Tenn. 614, 277 S.W.2d 348; Hardware Mutual Cas. Co. v. Bloomberg, Ohio App.1952, 135 N.E.2d 698; Kelly-Dempsey & Co. v. Century Indemnity Co., 10 Cir., 1935, 77 F.2d 85; United States Fidelity & Guaranty Co., Baltimore, Md. v. Reinhart & Donovan Co., 10 Cir., 1948, 171 F.2d 681.

It would appear that in each of those cases the situation differs from the situation in this case.

It is the holding of the Court that under the terms of its Comprehensive Liability Policy KSL 5236957 the defendant is legally obligated to pay the plaintiff the following amounts:

Amount paid in settlement of Leonard M. Easley claim $7,201.85 with interest thereon at the rate of five per cent per annum from August 15th, 1958; amount paid in settlement of Elaine Easley claim $1,687.15 with interest thereon at the rate of five per cent per annum from October 22d, 1958; amounts paid to Charles E. Cornwell, George S. Marty, and David J. Butler $3,389.59. (The dates when these payments were made do not appear in the record).

It is hereby ordered that judgment shall be entered in favor of the plaintiff and against the defendant for the above amounts and for the taxable costs.

It is further ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment herein. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.