BERGER BROS. ELECTRIC MOTORS, INC., Respondent, v. NEW AMSTERDAM CASUALTY COMPANY, Appellant.

Argued November 13, 1944; decided November 30, 1944.

*Carroll M. Roberts* for appellant. Even though it be held that the damages suffered resulted from an accident, such accident arose by reason of defective workmanship and occurred after the assured's work and operations had been completed and, hence, is expressly excluded from coverage under both policies. (*Hutchinson Gas Co.* v. *Phoenix Indemnity Co.*, 206 Minn. 257; *Crouch et al.* v. *Gutmann*, 134 N. Y. 45; *Spence* v. *Ham*, 163 N. Y. 220.)

*Leonard H. Amdursky* and *Samuel Berger* for respondent. The plaintiff's work was not complete at the time of the accident. It was not completed until May 3, 1941, when it correctly installed the motors. (*In Re Abbott Gamble Co.*, 195 F. 465; *Pike* v. *Naylon Securities Co., Inc.*, 140 Misc. 734; *Boyle* v. *Paolini Cafeteria & Restaurant, Inc.*, 220 App. Div. 482; *Thurston* v. *Blount*, 216 Mass. 264; *Carter* v. *Commonwealth*, 194 N. E. 915; *Winer* v. *Rosen*, 231 Mass. 418; *Phillip* v. *Gallant*, 62 N. Y. 256; *Spence* v. *Ham*, 163 N. Y. 220.)

THACHER, J. This is a suit upon two insurance policies pursuant to which the defendant casualty company agreed to indemnify the plaintiff against loss by reason of liability imposed by law for damages caused by accident and arising out of the operations specifically set forth and at the locations stated in the policies.

During the year 1940, the Central New York Power Company, which furnished electric current to consumers in Oswego

County, determined to change the frequency of its current from twenty-five to sixty cycles. This change necessitated the substitution of sixty-cycle equipment for twenty-five-cycle equipment theretofore used by its customers. For this purpose the power company employed the services of the plaintiff under a written agreement pursuant to which plaintiff undertook to furnish the labor and equipment to replace the old equipment with the new. The work was to commence as soon as practicable after September 30, 1940, the date of the agreement, and was to be completed within four weeks after commencement. The agreement required the contractor on completion of the work to return to the power company a form signed " by the person performing the work, by the consumer and by the Contractor " evidencing that the work had been satisfactorily completed. The power company was then to inspect the work, the plaintiff was to remove his equipment, tools and materials, and payment was to be made twenty days after completion.

Pursuant to this contract plaintiff performed certain work at the turkey farm of George F. Chillson, one of the power company's customers in the town of Hannibal, Oswego County, and among other things installed three new motors in three incubators used for hatching turkey eggs. The work of installing and connecting the new sixty-cycle motors with fan blades in place was completed on December 23, 1940, and final payment for the work was made January 2, 1941. Between December 23, 1940, when plaintiff completed its work at the Chillson farm, and May 3, 1941, no agent or employee of the plaintiff and none of its tools, equipment or materials were at the farm.

No use was made of incubators until the commencement of the incubating season on February 20, 1941. Between that day and May 3, 1941, fourteen separate hatches, aggregating 17,000 eggs, were set in the three incubators, with disastrous results. Many of the eggs were not hatched at all and the poults which were hatched either died in infancy or survived as puny creatures. It is stipulated that the damages thus suffered were caused by the negligence of plaintiff's employees in connecting the wiring so that the motors and fans operated in the wrong direction.

Liability for the farmer's damage, predicated on plaintiff's fault, was " imposed by law ", and we must decide whether loss

resulting to the plaintiff from this liability is within the coverage of the policies in suit.

The first policy, the term of which was from March 6, 1940, to March 6, 1941, carried a property damage indorsement which extended the coverage of the policy to " loss from the liability imposed by law upon the Assured for damages on account of injury to or destruction of property " (with exceptions not pertinent in this case) " resulting solely and directly from any accident due to or caused by the operations specifically set forth in the Schedule of this Endorsement and at the places mentioned therein, provided such damage or destruction is caused as a result of accidents occurring while this Endorsement is in force ". The scheduled operations included the installation of electrical apparatus and the location specified is " 395–405 State Street, Rochester, N. Y. and elsewhere." Thus the wiring and installation of the motors and fans on the Chillson farm was an operation out of which a liability within the coverage of the policy would arise unless excluded by some express provision of the policy. The property damage indorsement expressly excluded " damage to or destruction of property " as a result of accidents excluded from the coverage under condition A of the policy and this condition contains the following: " Condition A: This Policy does not cover any accident * * * (8) resulting from defective workmanship or material in connection with contracting operations after the Assured's work is completed ".

The second policy, the term of which was from March 6, 1941, to March 6, 1942, also carried a property damage indorsement covering loss by reason of liability imposed upon the insured by law for damages because of injury to or destruction of property caused by accident and arising out of operations including the installation of electrical apparatus. This indorsement also excluded all accidents excluded under the provisions of the policy, which contained the following clause: " This policy does not apply: * * * (d) to accidents occurring after operations have been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured, other than accidents caused by the existence of tools, uninstalled equipment and abandoned or unused materials ".

When the plaintiff completed its work and removed all of its tools, equipment and materials from the Chillson farm on December 23, 1940, no accident had occurred. Nothing had happened. There was no mishap whatever. Not until the eggs were placed in the incubators did any accident occur, and if we assume, as the plaintiff contends, that the accident did occur on February 20, 1941, '' when the cause and effect merged into a consummated accident '', this accident resulted from defective workmanship after the work of installation was completed. This must be so unless we yield to the plaintiff's contention and hold that the work was not completed at that time because the wiring was defective; but so to construe the language of the excluding clauses would deprive them of all meaning and purpose. By these clauses the parties intended to limit the casualty company's liability to accidents occurring during the progress of the work and to exclude liability for accidents occurring, after the work was completed, as the result of defective workmanship. If that be not the meaning of the plain language used, the insurer would remain liable indefinitely for defective workmanship upon the theory that defective work is never complete until the defect is discovered and corrected. But this is a risk which the parties intended to exclude from the coverage of the policy, and we cannot read these policies as intended to cover such risks, for the language is plain and unambiguous.

There were contentions here and in the courts below predicated upon decisions in which the courts have considered what is and what is not an accident in various legal and factual settings. We need not pause to consider these contentions in this case for, conceding that the mishap to the turkey eggs was an accident, we are constrained to conclude that it did not occur before the work was completed in December of 1940.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

DESMOND, J. (dissenting). When plaintiff's employees left the Chillson farm they thought they had done a proper job of hooking up the motors to the incubator fans. Some months later the farmer, sharing that mistaken belief, turned on the

fans, only to find out, after great damage had been done, that the motors had been so connected up that the fans ran the wrong way, with the result that the turkey eggs could not be hatched out. Surely there was then an accident and resulting accidental damage to the eggs. We are now told, however, that defendant's policy excludes coverage for liability for that particular accident. The policy is being construed by the majority of this court as if it covered only accidents occurring while plaintiff's workmen were still actually at work. If such a meaning had been intended, it would have been easy to say so. What the policy actually says is that it excludes accidents occurring after plaintiff's work has been " completed." In no real or reasonable sense can it be said that the work of connecting up the fans was " completed " when it was so done that the fans would not perform their allotted function at all, but would damage the eggs, instead of hatching them. Such a job is no more " completed " than would be the repair of an electric clock with its hands left running backwards, or of an electric refrigerator so hooked up that it would not lower the temperature, or of an electric lamp that would not light. The Appellate Division, we think, was correct when it said here that the mistake of plaintiff's workmen so pervaded the whole job that it could not be considered " completed " when they left the Chillson farm on December 23d. Actually they did return and complete it some months later, after the damage to the eggs had been discovered. The application we make of the word " completed " to the facts of this case does not deprive the policy exception of all force. The work, we suppose, might be considered " completed " if the appliances had been left in usable condition even though the materials or workmanship were so defective that later use might some day cause an accident. We hold only that when the workmen left the farm on December 23d, the work of rewiring the fans had not been " completed," as that word is ordinarily used in common speech.

The judgment below should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY and LEWIS, JJ., concur with THACHER, J.; DESMOND, J., dissents in opinion in which CONWAY, J., concurs.

Judgment accordingly.