## LARSEN v. GENERAL CAS. CO. OF WISCONSIN.

### Civ. No. 3442.

United States District Court
D. Minnesota, Fourth Division.

July 27, 1951.

Freeman, King, Larson & Peterson, Minneapolis, Minn. (Harding A. Orren,

Minneapolis, Minn., of counsel), for plaintiff.

Robb, Robb & Van Eps, Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

This is a suit on an insurance policy which is designated as a Manufacturers' and Contractors' Public Liability policy. It was issued by the defendant to the plaintiff, who operates under the name of Camel Oil Burner Company. His business is devoted primarily to the servicing and repairing of oil burners. In August, 1948, Larsen was engaged to clean and service the furnace and oil burner at the residence of one Frank Clinite. On August 3rd, he sent one of his employees by the name of Strand to clean the furnace preparatory to his inspection and servicing of the oil burner. The cleaning was completed on August 3, 1948, but in performing this part of Larsen's contract, the connection between the furnace door and the oil burner was negligently reassembled—the union was cross-threaded—and on August 7, 1948, when the oil burner was turned on, oil leaked out of the cross-threaded union, and a fire ensued.

The Home Insurance Company paid the loss to Mr. Clinite, and later, as subrogee, it commenced an action against Larsen, based upon negligence of his servant, to recover the amount of damage it paid to Mr. Clinite. The defense of that suit was tendered to this defendant by Larsen, but the defense was refused. The Home Insurance Company obtained a judgment against Larsen in the sum of $4,683.81 on or about December 12, 1949, and he now sues upon his Manufacturers' and Contractors' Public Liability policy seeking to recover the amount of the judgment in the Home Insurance Company suit, plus interest and attorneys' fees.

The defense herein is predicated upon three principal grounds: (1) That the incident in question and resulting fire was not an accident within the meaning of the policy; (2) that the loss is excluded by reason of the provisions of the policy which exclude obligations assumed by contract; and (3) that the loss is excluded by the terms of the policy by reason of the fact that any accident was the result of a condition in work completed by the insured at the premises of Mr. Clinite.

The insuring agreement in the property damage endorsement of the policy reads as follows: "To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon the Insured by law for damages because of injury to or destruction of property, including the loss of use thereof, as the result of an accident occurring during the effective period of this endorsement, caused solely and directly by reason of the business operations of the Insured described in and covered by the Schedule of this endorsement, except as to any operations or exposure in such premises which are shown to be excluded in said policy or, which are expressly shown to be excluded elsewhere in this endorsement, and subject further to all exclusions, conditions and limitations hereinafter contained."

Included in the provisions of the policy under "Definition of Hazards" appears the following:

"Section 1. Operations.

"The operations of the named Insured necessary or incidental to the conduct of the work or business described in the Declarations including ownership, maintenance and use of the premises in conjunction with such operations."

The description and classification of operations is as follows:

"2929 Stevens Ave., Mpls., Minn.

"Plumbing—N. O. C. gas steam, hot water, or other pipe fitting—including house connections, shop and retail stores or display rooms."

The pertinent provisions of the exceptions upon which defendant relies are as follows:

"This policy does not apply:

"(1) Under Section 1 of the Definition of Hazards

   *    *    . *    *    *    *

"(f) to the existence of any condition in work completed or abandoned by the named Insured, if such work is not on premises owned, rented or controlled by the named Insured, except with respect to tools, equip-

ment or unused materials left at the place of such work.

\* \* \* \* \* \*

"(3) Under Sections 1 and 2 of the Definition of Hazards

\* \* \* \* \* \*

"(i) to liability assumed by the Insured under any contract or agreement."

■ There is no. merit to defendant's contention that the fire loss was not the result of an accident. The negligent act of Larsen's employee in failing to connect the pipes in the furnace properly after cleaning proximately caused the fire when the oil burner was thereafter turned on. The causal connection between the leaking of the oil from the cross-threaded union and the fire is admitted. There is no limitation or restriction in the policy with reference to the use of the word "accident." Consequently, there is no occasion to employ a narrow or restricted interpretation or understanding of that term. In general parlance, and with the usual understanding of the word, there can be no question but that the damage was caused accidentally by the negligence of Larsen's employee. The fire was an occurrence or mishap unintentionally caused and comes within the plain intendment of the policy as the term "accident", broad and unrestricted, is used therein.

■ And likewise there is an utter absence of any persuasiveness in defendant's contention that this accident is excluded from coverage because the "liability was assumed by the insured under any contract or agreement." Defendant argues that because the insured had a contract to clean and service the oil burner, the resulting accident comes within the meaning of the exclusion. Obviously, this provision is only intended to exclude liability which the insured assumes by some agreement or understanding of contract. Such an agreement would preclude the insured from interposing any defense available to him under the law. The policy only intends to cover liability "imposed upon the insured by law." All business transactions are entered into according to some sort of an agreement or understanding. This business venture was the usual type which the

policy was designed to cover within the terms of the policy if liability was imposed by law. It is conceded that liability for the Clinite fire was imposed upon Larsen by law. The exclusion provision referred to is patently not applicable.

■ It may be stated that defendant relies principally upon the contention that the work had been completed by the insured at the time of the accident, and hence is excluded by the provision 1(f) above recited. This contention requires reference to a more detailed discussion of the admitted facts. This action, so far as the fire and accident is concerned, is submitted on the record in the Home Insurance Company case. As stated, it appears from the testimony therein that Larsen was engaged by Mr. Clinite to clean, inspect and service the furnace and oil burner. The usual method of operation which was followed in this instance was for one of Larsen's employees to perform the cleaning. In performing this part of the job he had to remove the fire door, with part of the oil burner attached to it. In replacing this connection, the union on the oil line became cross-threaded, causing the oil leak which occasioned the fire. Strand, Larsen's employee, had completed the cleaning of the furnace on August 3rd, but he had nothing to do with the servicing of the oil burner. The fire occurred, as stated, on or about August 7th. Defendant urges, therefore, that the admitted facts establish that the work was completed within the meaning of the policy and hence any liability for any accident after the work was completed is excluded under this part of the exclusions. However, the admitted facts will not support such a finding. Larsen testified that, after a furnace had been cleaned, it was his practice to complete the job by personally inspecting and servicing the oil burner. The inspecting and servicing of the oil burner always followed the cleaning of the furnace, and often several days elapsed before Larsen would be on the premises to complete the job. This had been Larsen's custom and practice for several years in servicing the Clinite oil burner. The fortuitous incident of the Clinites' turning on the oil burner

on August 7th—in midsummer—does not negative the fact that the work was uncompleted. Larsen had agreed to do a certain complete job at the Clinite home. The inspection and servicing of the oil burner after the cleaning of the furnace was for the very purpose of placing the oil burner in order for fall and winter use. Until such servicing was done, the job was not complete. He concluded that there would be ample time to complete the job before there would be any occasion to use the oil furnace. There is no occasion for discrediting Larsen's testimony in this regard. There is nothing improbable about it. He was merely following the custom that he had adopted for several years in performing this type of work. And it is significant that, when the proof of loss was served, and before any litigation had commenced, Larsen stated in his proof of loss. "On August 3, 1948, our man, Mr. Strand, was there cleaning the furnace. In cleaning the furnace it is necessary to remove fire door with part of the oil burner attached to it. In replacing same the union on the oil line was cross threaded, therefore not being able to make a tight connection in this place. Mr. Larsen always checks burners after Mr. Strand cleans furnaces but owing to the warm weather he had not been there before Mr. Clinite started the oil burner * * *."

Some emphasis is placed on the recitals in the complaint in the Home Insurance Company case to the effect that Larsen had finished his work and left it in an unworkmanlike and hazardous condition. Reference is also made to the findings of the court in the Home Insurance Company case, wherein it is recited in Paragraph VI, "That the defendant Arthur Strand was, at all times mentioned herein, an employee of the defendant Alfred F. Larsen, doing business as Camel Oil Burner Company, and just prior to August 7, 1948, the defendant Arthur Strand, in the scope and course of his employment, cleaned the furnace and oil burner upon the said premises hereinbefore mentioned, and did then and there so carelessly, negligently, wrongfully and unlawfully reassemble the said

oil burner that the same was left in an unworkable and hazardous condition."

It is argued that plaintiff is bound by the findings and adjudication in the Home Insurance Company case and that the recitals in the findings establish that the work was completed within the purview of the exclusion clause of the policy. But the Court in the Home Insurance Company case was not concerned with, nor did it attempt to pass upon, the question which is presented herein. Strand did leave the work in an unworkmanlike and hazardous condition, but it does not follow from that that Larsen's work was completed within the meaning of the policy. On the contrary, the testimony in the Home Insurance Company case unmistakably establishes that the work was not complete when the accident occurred. Where a complete contract job involves more than one type of work, there may be, and frequently is, some lag upon the completion of one phase of the work and the commencement of the next. Here, Strand cleaned the furnace on August 3rd. The fire occurred on August 7th before Larsen, in accordance with his custom, had been out to the Clinite residence to complete that which he had undertaken to do. If the job had been completed, the accident in all probability would never have occurred. The inspection and servicing of the oil burner would have disclosed the defective union.

Several cases are referred to in support of defendant's position in this regard: Berger Brothers Elec. Motors v. New Amsterdam Cas. Co., 1944, 293 N.Y. 523, 58 N.E.2d 717, 156 A.L.R. 1281; Standard Accident Ins. Co. v. Roberts, 8 Cir. 1942, 132 F.2d 794; Smith v. U. S. Fidelity & Guaranty Co., 1942, 142 Neb. 321, 6 N.W. 2d 81; Baker v. Maryland Cas. Co., 1948, 73 R.I. 411, 56 A.2d 920. But see Daniel v. New Amsterdam Cas. Co., 1942, 221 N. C. 75, 18 S.E.2d 819. However, the cases relied upon by defendant are all to be differentiated from the instant case by reason of their own facts. In each of the cases referred to by defendant, the entire work that plaintiff had agreed to perform had been completed. Here, Larsen had re-

ceived no pay for his work, nor had he billed the customer. The customer did not consider the work completed, nor did the contractor. And the undisputed evidence establishes that an important and highly essential part of the job remained undone.

It follows from the foregoing that plaintiff is entitled to recover the sum of $4,-683.81, with interest, as indemnity under the policy referred to. The parties have stipulated that, if plaintiff is entitled to recover, an allowance of $500 as attorneys' fees is reasonable. The Court approves that allowance.

The foregoing may be taken as the Court's findings of fact, and as conclusions of law, judgment may be entered in favor of the plaintiff and against the defendant in the sum of $4,683.81, with interest at the rate of six per cent per annum from and after December 12, 1949, plus $500 attorneys' fees, together with his costs and disbursements herein. It is so ordered. Let judgment be entered accordingly.

An exception is allowed.