HERCULES CO., Inc., Plaintiff,

v.

ROYAL INDEMNITY COMPANY,
Defendant.

United States District Court
S. D. New York.
April 7, 1959.

Logan Cresap, New York City, for plaintiff.

Cohen, McGuirk & Michels, New York City, Salvatore J. Martino, New York City, of counsel, for defendant.

DAWSON, District Judge.

This action, tried by the Court without a jury, involves the construction of a policy of liability insurance issued by the defendant.

There was no substantial dispute as to the facts. The Court finds the following facts:

1. Plaintiff was and is a New Jersey Corporation. Defendant is a corporation engaged in the business of insurance with its home office in New York City. The amount in controversy exceeds $3,-000.

2. In the regular course of its business, defendant issued to plaintiff a comprehensive general liability policy on September 8, 1952 through its duly authorized agent located in Baltimore, Maryland. The policy period started on October 6, 1952. It insured the plaintiff, among other things, for property damage liability in connection with work to be done by the plaintiff in its ordinary operations, which included, as shown in the "liability extension schedule," "cleaning out holds of ships, removing waste materials and dunnage." The terms of the policy obligated the defendant "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the use thereof, caused by accident," and also "to defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

3. While said policy was in effect, and on or about March 11 and 12, 1953, plaintiff in the regular course of its business performed certain work on the S. S. Horace Irvine at Philadelphia, Pennsylvania, at the special instance and request of the vessel's owner, Weyerhaeuser Steamship

Company, consisting of cleaning the deep tanks located in the holds of the vessel.

4. Thereafter on May 19, 1953, plaintiff received notice from said Weyerhaeuser Steamship Company alleging that the aforesaid work had been negligently performed and had resulted in accidental destruction of property in that plaintiff had permitted the rags used by it in the performance of said work to gain access to the bilge suction line from said tank and had introduced and permitted said rags to foul certain valves servicing said suction line, and that as a result thereof a portion of the liquid cargo carried on said ship had escaped by reason of the negligence of the plaintiff. Weyerhaeuser Steamship Company claimed $9,256.59 as the reasonable and proper value of the cargo lost, and $449.-33 as additional expenses incurred by it, and demanded that payment therefor be made to it by the plaintiff. Plaintiff gave due and timely notice of said claim to defendant and furnished full details relating thereto. Thereafter, on August 18, 1953, defendant refused to defend plaintiff on said claim and notified the plaintiff in writing that it would perform no further services in connection with the matter.

5. On May 28, 1954, Weyerhaeuser Steamship Company instituted a civil action in the United States District Court for the District of New Jersey against the plaintiff herein for damages arising out of the aforesaid claim, filed a complaint and issued a summons. The claim in the said suit alleged, among other things, as follows:

"On the night of the 12th day of March and the early morning of the 13th day of March, 1953, at the port of Philadelphia, the Hercules Company, Inc. did undertake to clean the deep tanks of the SS Horace Irvine and in particular the #3 port deep tank thereof preparatory to loading lubricating oil therein. Said The Hercules Company, Inc. did not perform the work of cleaning the said #3 port deep tank carefully and in a workmanlike manner, but on the contrary, did such work in so careless and negligent a manner that it left rags in said deep tank and introduced and permitted said rags to gain access to the bilge suction line leading from said deep tank, and introduced into and permitted said rags to foul the two valves servicing the said bilge suction line, which said valves were designed and provided to prevent the escape of liquid cargo from the said #3 port deep tank."

6. Defendant having refused to defend any such claim, plaintiff was compelled to retain the services of an attorney experienced in maritime matters to defend it in said suit. It retained the services of Logan Cresap, Esq., a member of the New York bar, who is experienced in maritime matters, who in turn retained local counsel in New Jersey and rendered legal services in the matter until February 7, 1956, at which time the action in the United States District Court for the District of New Jersey was dismissed. In the course of his services Mr. Cresap, as said attorney, had numerous conferences and prepared the necessary legal papers and caused certain discovery proceedings to be conducted. He also directed a full investigation of the facts by James Hanna, a qualified marine surveyor, who was retained for this purpose. Defendant has conceded that the services of said Logan Cresap were reasonably worth at least $20 per hour; the evidence of said attorney and other evidence introduced, showed that the attorney rendered services which at said rate were reasonably worth the sum of $4,000. The plaintiff has paid to said attorney the amount of $2,000, and has agreed to pay him the balance of another $2,000, irrespective of the outcome of this litigation. In this present suit the plaintiff seeks recovery against the defendant for the sum of $4,000, which it alleged was the liability incurred in defending itself in said lawsuit which the defendant had agreed to assume in the policy of insurance.

7. The evidence received at the trial showed without dispute that the plaintiff had performed the work in cleaning out the hold of the S. S. Horace Irvine; that it had finished its work on or about March 12, 1953, or the early hours of March 13, 1953. The defendant maintained that no rags had been left or abandoned during such cleaning operations. This, of course, might have been a good defense to the claim of Weyerhaeuser Steamship Company but is not a defense in this action, since this action involves merely the question as to whether the insurance company was obligated to defend plaintiff against the claim of Weyerhaeuser even though such claim might have been groundless.

## Discussion

If the insurance company had an obligation to defend the claim, the extent of its obligation is determined by whether the allegations of the claim or the complaint filed by the Weyerhaeuser Steamship Company were of the type of claim covered by the policy. Goldberg v. Lumber Mut. Casualty Ins. Co., 1948, 297 N.Y. 148, 77 N.E.2d 131; Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 1951, 194 F.2d 173. The plaintiff bought insurance which entitled it to the defense of claims made against it within the terms of the policy, even though those claims were baseless. Therefore the only question for the Court is whether the claim made by Weyerhaeuser Steamship Company was a claim of the nature comprehended in the insurance policy.

 The defendant maintains the insurance policy excluded claims arising from "completed work." The defendant relies upon two provisions of the insurance policy in support of this contention. One is that on the face of the policy there was the phrase "Products (Including Completed operations) Excluded." There is no doubt from this provision of the policy that the insurance did not cover *products*. However, plaintiff did not sell products; it performed services. The exclusion of a products liability, the

premium for which under the policy would have been a certain percentage of sales, would certainly not have indicated to the average purchaser of insurance that there was an exclusion for liability for negligence in connection with services rendered by it. The claim of the Weyerhaeuser Steamship Company was not for negligence in connection with products sold by the plaintiff, but rather was concerned with negligence in connection with work done by the plaintiff in connection with services rendered in the cleaning out of the hold of the ship, which was an item specifically covered by the policy. The exclusion which relates to "products" manufactured or distributed by the insured, would not be an exclusion which would relate to services performed, out of which services the accident arose. No businessman reading this policy could reasonably assume from the rather ambiguous language used therein that the insured was not protected against the natural consequence of any negligence on its part in the performance of its services which constituted its regular business. If there is any ambiguity in the policy it must be construed against the insurance company.

 The defendant then contends that the liability asserted by Weyerhaeuser Steamship Company was excluded by the provision of the policy which stated:

"This policy does not apply:

* * * to injury or destruction * * * (3) in case of products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured out of which the accident arises."

The defendant maintains that the accident arose out of the work which had been "completed" by or for the named insured in that the work of cleaning out the hold was finished before the accident arose which resulted in the destruction of cargo. This raises the issue as to whether the work of cleaning out the hold was completed if the plaintiff company did the work in such a negligent

manner that it left in the hold certain cleaning rags and permitted the rags to gain access to the bilge suction valves. It was admitted that rags were used in the cleaning operation and that those rags should have been removed when the cleaning operation was finished. The Court finds that until those rags were removed the work for which the plaintiff was being paid had not been completed. Therefore, when it left the work, leaving these cleaning tools in the ship it did the work in such negligent manner that it would have been responsible for the proximate consequence of its negligence.

If, for example, the plaintiff, in cleaning out the hold of the ship, had smashed the bilge pump there can be little doubt that a claim could have been made against it for injuries resulting from this negligence. The claim in the present case is not much different. Instead of alleging that the bilge pump was smashed, it alleges that it was clogged by negligent acts on the part of the plaintiff.

If the insurance company had wished to limit its liability to acts occurring immediately during the cleaning operations it could have done so in the policy, and then it would not have been liable for damages occurring later as a result of negligent work. See Berger Bros. Electric Motors v. New Amsterdam Casualty Co., 1944, 293 N.Y. 523, 58 N.E.2d 717, 156 A.L.R. 1281. It did not do this, however.

### Conclusions

The Court concludes:

1. That under the language of the policy of insurance defendant was obligated to meet the expenses of the claim made by Weyerhaeuser Steamship Company against the plaintiff.

2. That the expenses incurred by the plaintiff as a result of the refusal of the defendant to defend the claim of Weyerhaeuser Steamship Company was the sum of $4,000.

3. That plaintiff is entitled to judgment against defendant for $4,000, together with costs and disbursements of the action.

Let judgment be entered accordingly.