**BITUMINOUS CASUALTY CORPORATION, Appellant,**

v.

**R & O ELEVATOR CO., Inc., and S. J. D. Inc., et al., Appellees.**

No. 16674.

United States Court of Appeals
Eighth Circuit.

July 12, 1961.

Maugridge S. Robb, Minneapolis, Minn., for appellant. Robb, Robb & Van Eps, Minneapolis, Minn., on the brief.

O. A. Brecke, Minneapolis, Minn., for appellee R & O Elevator Co. J. Robert Nygren, Minneapolis, Minn., on the brief.

Peter F. Walstad, Minneapolis, Minn., for appellee S. J. D., Inc.

Before JOHNSEN, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

R & O Elevator Company, Inc., a Minnesota corporation brought this action against Bituminous Casualty Corporation, an Illinois insurance company, for declaratory judgment that a certain comprehensive liability policy issued by Bituminous to plaintiff affords coverage in respect to claims against plaintiff for damages for personal injuries resulting from plaintiff's alleged negligence causing the fall of a passenger elevator carrying passengers. The policy was in force at the time of the accident, but the insurance company denied that its policy covered the accident and refused defense of suits for damages brought by the injured passengers. There was federal jurisdiction and the case was tried to the court without a jury. The court's decision was in favor of the plaintiff and a judgment, declaring coverage of the policy in respect to the accident, was entered accordingly against the insurance company. It appeals.

The findings and conclusions made by the trial court include the following:

"1. * * * The business of plaintiff consists of the manufacture, installation, repair and servicing of passenger and freight elevators, and as an integral part of its regular business, plaintiff enters into contracts with the owners of buildings for the servicing and inspection of elevators.[1]

* * * * * *

---

1. The description "manufacture, install and service elevators" is typewritten in the form, likewise in another paragraph "ele-vator erection or repair" is also typewritten.

"3. On April 28, 1958, plaintiff entered into a service contract with S. J. D., Inc., the owner of the Kasota Building, which is an office building * * * [in] Minneapolis, Minnesota, whereby R & O undertook to service and inspect the passenger elevator and the freight elevator located in the Kasota Building once a month, for a stipulated price of $16.50 per month. This contract was in the usual form of service contract employed by R and O and was received in evidence in this case * * *. This contract provided that R and O would 'make examination, adjustments and necessary cleaning and lubricating of the elevator once per month. We will furnish lubricants and cleaning material. Work to be done during regular working hours of regular working day of the trade.' This agreement also provided that R and O would 'advise you if any repairs or replacement of parts are necessary, and at no time will we do any of this work on your elevator without your permission.' [2]

"4. During the period between the signing of this contract and October 14, 1958, when the accident here involved occurred, R and O serviced this elevator by inspection and lubrication once each month during the months of June, July, August and September, the last service call being made on September 29, 1958. Each of these inspections consumed about one hour's time, and during said inspections R and O did not replace any parts or make any repairs to the elevator. And it made no recommendation to S. J. D., Inc., pertaining to extra service or replacement of parts.

"5. On October 14, 1958, while this elevator was carrying passengers from the fourth floor to the ground floor, it dropped to the ground floor level, causing personal injuries to a number of the passengers. Thereafter, these passengers brought action against S. J. D., Inc., in the District Court of Minnesota for Hennepin County, Fourth Judicial District, to recover damages for negligence in the operation and maintenance of the elevator. S. J. D., Inc., impleaded R and O in all of these actions as a third party defendant, alleging that the accident was the result of its negligence in servicing and inspecting the passenger elevator.[3] * * *

"6. On September 10, 1958, in consideration of the premiums therein stated, Bituminous issued its 'Comprehensive Liability Policy' to R and O covering its operations from October 1, 1958, to October 1, 1959.

2. The contract between R and O and S.J.D., Inc., read as follows:

"We are pleased to quote you the net price of Sixteen Dollars and Fifty Cents ($16.50) payable once a month for oil and grease inspection and service of your 1 passenger & 1 freight elevator in Kasota Bldg., 330 Hennepin.

"Under this agreement we will make examinations, adjustments and necessary cleaning and lubricating of the elevator once per month. We will furnish lubricants and cleaning materials. Work to be done during regular working hours of regular working day of the trade.

"We will advise you if any repairs or replacement of parts are necessary, and at no time will we do any of this work on your elevator without your permission.

"The above quoted price is subject to reconsideration and adjustment annually, to reflect decreases or increases in labor and materials.

"This agreement will be effective June 1, 1958, and will run until terminated by either party by thirty days notice in writing."

3. The complaints filed in state court included allegations that R and O "was negligent and careless in the manner in which it adjusted, cleaned and lubricated said elevator and was further negligent and careless in failing to advise the building owner of certain necessary repairs and replacement of parts * * * If the building owner is chargeable with any negligence * * * its negligence was at most secondary where as the negligence and carelessness of R and O in causing said alleged injuries was primary. * *"

In this policy, the business of the insured is stated as 'manufacture, install and service elevators.' By endorsement, it was agreed between the parties that 'the policy does not apply to the products hazard as defined herein.' Under the 'Declarations' attached to the policy, reference is made to the various categories of R and O's employees by function, such as 'Elevator Erection or Repair,' 'Elevator or Escalator Mfg.,' 'Clerical Office Employees,' etc. The premiums to be paid for this insurance were based on the wages paid various sub-categories of employees, including those engaged in 'elevator erection or repair.'

"7. The Court finds that the Bituminous policy affords coverage for any negligence on the part of R and O in the performance of its service contract, not only during the period when its workmen were actually engaged in such service, but for any damages which may thereafter proximately result from such negligence. Service and maintenance of elevators was one of the primary business pursuits of the insured and was one of the activities which the policy purported to cover. In the servicing of this elevator, R and O did not sell any products to S. J. D., Inc. It rendered services of a character which the Court cannot find to come within the definition of the terms 'goods or products' or 'completed operations' contained in the definition of 'products hazard.' The Court, therefore, concludes from a construction of the terms of this policy as a whole and resolving any ambiguities in favor of the insured, that this policy affords coverage to R and O in the instant cases referred to * * * herein.

"8. The plaintiff, R and O, seeks a declaratory judgment in this cause, determining that the Bituminous policy afforded coverage in the cases brought by third party plaintiffs in the State Court, and the Court concludes that it is entitled to such relief."

Conclusions of Law

"It is therefore adjudged:

"1. That plaintiff is entitled to a declaratory judgment determining its rights under the policy issued by Bituminous;

"2. That the policy affords coverage to R and O in the instant case and that Bituminous is liable under its policy for the investigation and defense of the claims asserted by the third party plaintiffs herein and for the payment of any judgments which may be recovered by said third party plaintiffs against R and O; and

"3. That it is the obligation of Bituminous to reimburse R and O for any costs and expenses and attorneys' fees incurred by it in the investigation and defense of said suits."

The court entered a memorandum decision made a part of the findings and conclusions reported as R and O Elevator Company, Inc., and S. J. D., Inc. et al. v. Bituminous Casualty Corporation, D.C., 194 F.Supp. 452. Throughout the memorandum the court recognized that the true intent of the insurance contract, evidenced by the comprehensive policy, was to be drawn from a consideration of the contract as a whole.

The court considered reproduction of the following provisions of the policy sufficient for discussion of the issues: It is a comprehensive liability policy; made up of insuring agreements, exclusions, conditions, definitions and other terms; and attached to these are declarations and schedules; the business of the insured is stated as "Manufacture, Install & Service Elevators"; and the broad agreement is to pay "all sums" and to defend "any suit" subject to exclusions etc. of the policy.

The relevant provisions of the policy are as follows:

"Bituminous Casualty Corporation * * * Agrees with the insured, * * *

"I. Coverage A——Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

* * * * * *

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury. * *

"Conditions

* * * * * *

"3. Definitions:

"(a) Contract. The word 'contract' means, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement.

* * * * * *

"(g) Products Hazard. The term 'products hazard' means

"(1) goods or products manufactured, sold, handled or distributed * * *;

"(2) Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pickup or delivery, except from or onto a railroad car, * * * (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations.

* * * * * *

"Exclusions

"This policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement except under coverages A and C, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products; * * * *"

By endorsement, it was agreed between *Bituminous* and its insured, R and O, "that the policy does not apply to the products hazard as defined therein."

On the trial of the case the insurer admitted that the policy was in force according to its terms at the time of the accident; that conditions precedent to bringing the suit had been complied with by the plaintiff; and that there was no dispute as to the accident having occurred or as to the claims for damages that were made and the suits brought.

It was the position of the insurer that there was no insurance coverage under the policy for any negligence of plaintiff, R and O, in the performance of its elevator maintenance agreement with the building owner, by reason of the endorsement on the policy excluding coverage of products hazard as defined in the policy. The court said:

"The insurance company contends that any service by way of maintenance of this elevator by the insured was complete when R and O's employees concluded their servicing of the elevator each month. Hence, it is urged that there were only completed operations as defined under the 'Products Hazard' provisions, and no insurance coverage continued after the men left the job on any maintenance assignment by reason of the express endorsement that the policy did not apply to 'Products

Hazard'. Bituminous admits that the policy provided coverage for any negligent acts of R and O employees during the period that its maintenance employees were actually servicing the elevator. But the position is that coverage ceased [by reason of the completed operations] as soon as the employees took up their tools and left." [194 F.Supp. 454.]

It was conceded by the insured and fully recognized by the court that the policy excludes the "Products Hazard" as defined in the policy but it appeared to the court that,

> "the fact that there is no coverage under the 'Products Hazard' clause would not warrant the conclusion that the coverage of this policy should be so drastically limited as Bituminous contends. There are no provisions in the policy which suggest such limited coverage and where we have a comprehensive liability policy that is a classic example of an abstruse insurance contract, with its many conditions, exclusions and endorsements, any doubts as to the coverage should be construed against the insurer. Ocean Accident and Guarantee Corp. v. Aconomy Erectors, Inc., 7 Cir., 1955, 224 F.2d 242."

The court continued by saying that "[m]aintenance of elevators was one of the primary business pursuits of the insured, and clearly it was one of the business activities that the agreement of insurance purported to cover. In the maintenance of this elevator, R and O did not sell any products to S.J.D. Maintenance of elevators must be distinguished from the business of selling elevators or installing parts in elevators. The negligent conduct upon which liability is claimed in the State Court suit is R and O's alleged failure to properly inspect and lubricate the elevator and its alleged failure to notify the owners of the need for elevator repair and replacement of elevator parts."

The court noted that the premium paid for the insurance agreed upon under the policy was computed upon the wages paid various categories of the insured's employees according to their functions as "Elevator Erection or Repair," "Elevator or Escalator Mfg.", "Clerical Office Employees," etc., including those engaged in performing the contracts for servicing, erection or repair of elevators. Whereas for insurance against products hazard the premium would be computed upon the volume of sales of products.

The court concluded as to provisions of the policy concerning "contract" that

> "[a]lthough this paragraph[4] is not a model of clarity by reason of inadequate punctuation, it must be recognized that it is intended that contract coverage is afforded under coverage A and C of the policy. When we turn to the definition of 'Contract' as defined in the printed portion of the policy, we find that it specifically includes 'elevator or escalator, maintenance agreements.' "

Analyzing certain of the policy provisions it appeared to the court that there was nothing in the history of the products hazard clauses of the policy to support the insurer's position for the drastic limitation of the coverage. Hercules Company v. Royal Indemnity Co., D.C. S.D.N.Y.1959, 171 F.Supp. 746; Nielson v. Travelers Indemnity Company, D.C. N.D.Iowa 1960, 174 F.Supp. 648.

Turning to Schedule No. 1 of the Declarations, paragraph (a) refers to Schedule No. 2, where among the description of hazards "Elevator Erection or Repair" is listed, the court said:

> "It is true that there is no specific language which indicates that elevator repair specifically includes 'Completed Operations.' But it is to be doubted that under a maintenance contract requiring inspection from month to month, with the alleged ac-

---

4. This paragraph of the contract is set out under heading "Exclusions".

companying duty to notify the owners of the elevator of any need for repair, the responsibilities and duties of R and O under its maintenance contract at any time were 'completed' as that term is used in connection with 'Products Hazard' or otherwise. The alleged duty to advise the owners of the elevator of the need for repairs, if that duty existed, was continuous. It never ended merely because the workmen physically left the job. In any event, where the policy specifically recognizes contract coverage under A and C, as defined in the policy, and where the definition of contract specifically includes 'elevator maintenance,' there is implicit in the coverage any negligent acts involved here which may have taken place by reason of R and O's failure to comply with its duties under the contract of elevator maintenance entered into between it and the Building Company."

■ As to the Minnesota law which is controlling here, the court considered that the teaching of Lyman Lumber & Coal Co. v. Travelers Insurance Company, 206 Minn. 494, 289 N.W. 40, and Hutchinson Gas v. Phoenix Indemnity Co., 206 Minn. 257, 288 N.W. 847, cited and relied upon by the insurer, was not persuasive here and we agree.

The court was of the opinion that the case of Nielson v. Travelers Indemnity Company, D.C.N.D.Iowa, 1959, 174 F. Supp. 648, affirmed 8 Cir., 277 F.2d 455, presented substantially the same question that is presented by this case. We agree with that conclusion and that the question that was decided against the insurer in the Nielson case, where the identical policy provisions were controlling may not be distinguished from the question here presented. On appeal of that case, we adopted the opinion of Judge Graven as the opinion of this Court and affirmed on the grounds stated in the opinion.

It is true that the judgment against the insurer in the Nielson case was rested more on giving the benefit of a doubt as to the meaning of the policy to the insured than it is in the present case, but the results are identical.

■ The essential facts here are that the policy identifies the servicing of the elevator under contract as a regular function of the insured's business. It was the subject of a contract included in the coverage of the policy. The premium was paid for insurance against the hazard incident to doing the work in that business. The hazard of servicing the elevator had nothing to do with any "products". Insofar as the performance of the function of servicing the elevator by the insured constituted an operation, the operation never ended merely because the workmen physically left the job. As declared by the court,

"where the policy specifically recognizes contract coverage under A [Bodily Injury Liability] and C [Property Damage], as defined in the policy, and where the definition of contract specifically includes 'elevator maintenance,' there is implicit in the coverage any negligent acts [commission or omission] involved here which may have taken place by reason of R and O failure to comply with its duties under the contract of elevator maintenance * * *."

We think that the decision of this Court in General Cas. Company of Wisconsin v. Larson, 8 Cir., 196 F.2d 170, also supports the judgment. In that case the policy contained exclusions both as to products and completed operations. The insured contracted to clean, inspect and service an oil furnace and his employee who had cleaned the furnace put the parts back improperly so that a fire resulted when the furnace was used. An inspection of the furnace which was a pertinent part of the contract had not been made before the furnace was used. That part of the work remained to be done. This Court held this was not a completed operation which would exclude it from coverage. So in this case the insured's function of servicing the elevator was not completed in any sense by the work its employees had performed upon

the elevators and there could be no exculsion from coverage on account of "completed operations". Other cases lending support to the judgment are as follows: Nielson v. Travelers Indemnity Co., D.C. 1959, 174 F.Supp. 648. See also: Hercules Co., Inc., v. Royal Indemnity Co., D. C.S.D.N.Y.1959, 171 F.Supp. 746; Standard Accident Ins. Co. v. Roberts, 8 Cir., 1942, 132 F.2d 794; Butler v. United States F. & G. Co., 197 Tenn. 614, 277 S.W.2d 348; Hardware Mutual Casualty Co. v. Bloomberg, Ohio App., 135 N.E.2d 698.

On consideration of all the contentions and arguments made by the insurer against the coverage of the comprehensive liability policy claimed by the insured and determined by the court to offer coverage for this accident, we find no error in the proceedings and judgment.

■ On this appeal the contention is made for appellant to the effect that the parties to the insurance contract placed a construction upon the policy herein inconsistent with the claim upon which recovery was granted to the plaintiff.

It is based upon a letter written by an insurance agent to the insured in 1954 when the insured was confronted with a situation somewhat similar to the present. An action had been brought against it for damages for an injury on an elevator for which it had a service contract like the one at bar. Bituminous was the insurer there, as here, and the insurance agent, not an officer of the insurance company, wrote the letter to the insured expressing the writer's view that there was no coverage under the policy after the work "is completed and the men are withdrawn, except the coverage still continues as respects the material and tools still there. * * * If, however, during the month, an elevator crashes, that is not covered under the policy." But in that case, the insurer, notwithstanding the claim it made of noncoverage, accepted the defense of the action under a nonwaiver agreement and did settle the case, the amount it paid not being shown. The insured was represented by counsel in respect to that accident and he turned documents in his possession over to the attorneys for Bituminous for their use in defense of the suit. After the present case arose and the claims aggregating more than $400,000 were presented, the insurer for the first time made it clear that it would not accept coverage. The appellee was therefore obliged to and has bought insurance coverage against products hazard. But there is no evidence that its attorney or plaintiff itself ever acceded to the self-serving statement in the Miller letter or that, appellee ever stated or made acknowledgement that it did not have coverage in a case of this kind under the policy here involved.

We think it unnecessary to consider whether the theory of practical construction applicable to contracts in general must be applied to an insurance policy. 9 Dunnell's Minn.Digest, 3rd Ed. § 4646 (a).

But the record here shows that when the insurer offered the letter in question in evidence on the trial, plaintiff's counsel objected that it was just a self-serving interpretation of the policy and that "after all, we are concerned with what the policy provides and not with what Mr. Miller (the writer) says it provides." The court supposed the letter would be competent as relating to any inferences that might be drawn from the settlement made by appellant of the claim that was then pending. Counsel for the insured protested that it was an attempt to construe the policy. Counsel for the insurance company then argued that certain testimony of plaintiff's President

"was brought in * * * to make the claim that the plaintiffs in this case have been misled as to what that policy really means, through some act or omission on the part of Bituminous. This [letter] is only offered by the insurance company to show that there was nothing of that kind. * * *"

The insurance company counsel stated further,

"I don't claim that because Jerry Miller, the writer of the letter thinks

that is what the policy means, that that is in any manner binding on the court * * * but I do say * * * we have a right to show that [plaintiff's President] had absolutely no reason to think he had coverage from any act or omission on our part."

After the court handed down the decision, appellant submitted a proposed conclusion of law that "plaintiff is estopped to claim coverage * * * by its renewal of the policy after definition and construction."

We conclude that appellant's contention, that the judgment should be reversed on the ground that some practical construction of the policy provision was made by the parties prior to the time of the accident which precludes the plaintiff from recovering the judgment, is without merit.

On consideration of the whole record we find no reversible error and the judgment is

Affirmed.