LOTTINGER, Judge.
This suit was brought by John Glass and his wife, Mrs. Ruth G. Glass, for damages *748 sustained by Mrs. Glass from an accident which she received on December 5, 1958. Mrs. Glass received an electrical shock while touching a pot on her stove unit and at the same time holding the handle of her oven unit. The suit is against J. E. Flowers, General Electric Corporation, Floyd K. Pendarvis, d/b/a Pen’s Electric Company, General Accident Fire and Life Assurance Corp., Ltd. and Fireman’s Fund Insurance Company. The Lower Court awarded judgment in favor of petitioners, and the defendants have appealed. The petitioners have answered the appeal seeking an increase in quantum.
The record discloses that Mr. Glass had contracted with John E. Flowers to build a brick veneer dwelling on Mr. Glass’s lot in the City of Baton Rouge. Mr. Flowers, a general contractor, sub-contracted the electrical work to Floyd K. Pendarvis, d/b/a Pen’s Electric Company. The Glass family moved into their new home on the Friday following Thanksgiving Day and had been in the house one week when the incident took place. The basis of petitioner’s suit is that in an attempt to correct a short circuit in the wire leading to the electric dryer, an error was made and the ground wire which would ordinarily ground the cooking unit was joined with the detached ground wire of the dryer, which ground wire was “hot”. This connection made the ground wire attached to the cooking unit “hot”. There is no question but that this negligent connection was made by the employee of Floyd K. Pendarvis, and he had admitted the responsibility therefor.
The General Accident Fire and Life Assurance Corp., Ltd. admits that it had issued a policy of Manufacturers’ and Contractors’ Schedule Liability Insurance to Mr. Pen-darvis and that this policy was in effect during the progress of the electric work done at the Glass home. However, this insurance company contends that the policy which it issued does not cover liability for the accident in question. As the company refused to defend the case on the merits, but merely defended on the basis of no coverage, Mr. Pendarvis filed a third party complaint against his insurer.
After trial on the merits, the Lower Court awarded judgment in favor of Mr. Glass in the sum of $2,982.61, and for Mrs. Glass in the sum of $10,000.00. The judgment was against John E. Flowers, his insurer, Fireman’s Fund Insurance Company, Floyd Pendarvis, d/b/a Pen’s Electric Company and/or Pen’s Electric Company, and General Accident Fire and Life Assurance Corp., Ltd., in solido. There was also judgment in favor of Mr. Flowers and his insurer, and against Pendarvis and his insurer, and there was judgment in favor of Pendarvis on his third party petition.
The question to be decided by this Court is whether or not the accident in question was covered by the policy of insurance issued by General Accident Fire and Assurance Corp., Ltd. to Mr. Pendarvis, and the question of quantum.
The insurance policy issued to Mr. Pen-darvis is entitled “Manufacturers’ and Contractors’ Schedule Liability Policy”. The policy was submitted into evidence by all parties to this suit. The policy recites that the insured is F. K. Pendarvis, d/b/a Pen’s Electric Company, 6477 Choctaw Road, Baton Rouge, Louisiana. It sets forth that the named insured is an individual who occupied the entire building as a tenant and that the business of the named insured is electrical contractor. Item 3 under Declarations states as follows:
“The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the company’s liability against each such coverage and division shall be as stated herein subject to all the terms of this policy having reference thereto.” (Emphasis supplied.)
Now under Item 3, Coverages, we find “A. —Bodily Injury Liability”, and it is shown that limits of liability are $100,000.00 each *749 person, $300,000.00 each accident. Under this same part “A.” under Coverages, there are four divisions. One, “Premises — Operations”, opposite which there is an advanced premium of $43.27 shown. The second division of Part A. Bodily Injury Liability is “Elevators”, and there is no advanced premium shown opposite this division. The third division is “Independent Contractors”, and again,- there is no advance premium shown opposite this division. The fourth division is “Products — Completed Operations”, and again, there is no advance premium shown opposite this division. The next coverage is Part B. “Property Damage Liability”, which is not pertinent here, nor is Part C. and Part D. under Coverages. Still on the first page of the contract of insurance, we refer to Item 4. “Description of Hazards”, and under that is 1. “Premises— Operations”. Therein is typed the following information:
“6477 Choctaw Rd., Baton Rouge, electrical wiring — within building, including installation or repair of fixtures or appliances, installation of electrical machinery or auxilliary apparatus to be separately rated.”
Opposite this is then' given the premium basis, the rates, and the advance premiums made. Also included under the “Premises— Operations” is clerical office employees, and then opposite that the premium base is given, the rate and the advanced premium. Under Item 4, the second part is “Elevators”, and in that particular space, there is typed “not covered”. The third part of Item 4 is “Independent Contractors” and again there is typed “not covered”. The fourth part of Item 4. is “Products- — Completed Operations”, and again there is specifically typed “not covered”. The next part under Item 4 is part 5. “Contractual— Specified Types of Agreements” and beneath that, there is typed “not covered”.
The policy is clear to the effect that the only coverage afforded was under Division 1. “Premises — Operations”. This hazard is defined as “The ownership, maintenance or use of premises, and all operations.” The other hazards which are defined by divisions, and which are clearly not covered by the policy issued to Mr. Pendarvis, are defined as follows:
“Division 2 — Elevators
“The ownership, maintenance or use of any elevator designated in the declarations.
“Division 3 — Independent Contractors
“Operations performed for the named insured by independent contractors and general supervision thereof by the named insured, if the accident occurs in the course of such operations, other than (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures.
“Division 4 — Products—Completed Operations
“(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from the premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed .to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
“(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs *750 away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be “operations” within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations.”
We do not believe that there is any serious question but that the job of Pendarvis had been completed at the time of the accident in question. In the case of Butler v. United States Fidelity and Guaranty Company, 197 Tenn. 614, 277 S.W.2d 348, a Tennessee Supreme Court case, a Manufacturers’ or Contractors’ Schedule Liability Policy had been issued to a general contractor who was engaged in the repair and maintenance of residential and commercial buildings. Repairs had been made to one residence, and, subsequently, an occupant of the premises fell from the porch when a banister that had been repaired gave way. As in the instant case, there was no completed operations coverage, only coverage under Division 1., “Premises — Operations”. The Court therein held:
“ * * * Coverage under Hazard No. 1 ceases when the operations have been completed, even though the contractor has omitted or altogether failed to perform some substantial requirement of the contract, the performance of which the owner still has a right to demand.”
Further force to the argument that this particular job had been completed is given by Paragraph (2) of Division 4 — “Products —Completed Operations”, which is set forth above. This paragraph includes operations which have been completed or abandoned even though they are improperly or defectively performed. We, therefore, feel that there is no question but that the operations which had been performed by Pendarvis at the home of petitioners had been completed at the time of the accident.
It also appears clear to us that the accident, i. e. the electrical shock, which was received by Mrs. Glass and which is the basis of this lawsuit, was not covered by the policy of insurance issued by General Accident Fire and Life Assurance Corp., Ltd. The only hazard covered by said policy was that of “Premises — Operations” which is defined as “The ownership, maintenance or use of premises, and all operations.”
Under the “Definition of Hazards”, Division 4. “Products — Completed Operations”, Page 2. “Completed Operations” is defined as:
“Operations, if the accident occurs after such operations have been completed or abandoned, and occurs away from premises owned, rented, or controlled by the named insured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement, provided further the following shall not be deemed to be ‘operations’ within the meaning of this paragraph:
(a) * * *; (b) * * *; (c) * * *; (d) operations for which the classification stated in Division 1 of Item 4. of the Declarations specifically includes completed operations.” (Emphasis supplied.)
Certainly there is nothing in Part 1. “Premises — Operations” under Item 4. “Description of Hazards” which would specifically include completed operations. Fur *751 thermore, under “Exclusions” on Page 2. it is stated:
“This policy does not apply: (a) * * * ; (b) * * * ; (c) under Division 1 of the definition of hazards, and under coverage ‘c’ 2. (1) the independent contractors’ hazard or (2) the products completed operations hazard.” (Emphasis supplied.)
In other words, the contract specifically says that this policy does not apply under Division 1 “Premises-Operations,” to “Products — Completed Operations Hazard”. It, therefore, specifically states that if an assured has coverage only under Division 1 “Premises — Operations”, which is defined as “Ownership, maintenance or use of premises, and all operations”, that this does not mean that the assured has coverage for the “Products — Completed Operations” hazard.
“Completed operations” coverage is a separate and distinct risk and is not covered under Division 1 “Premises — operations”. See Butler v. United States Fidelity and Guaranty Company, 197 Tenn. 614, 277 S.W.2d 348; Standard Accident Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794; Duval v. Aetna Casualty & Surety Co., 304 Mich. 397, 8 N.W.2d 112; Hutchinson Gas Co. v. Phoenix Ind. Co., 206 Minn. 257, 288 N.W. 847; Baker v. Maryland Cas. Co., 73 R.I. 411, 56 A.2d 920; and Berger Bros. Electric Motors Inc. v. New Amsterdam Cas. Co., 293 N.Y. 523, 58 N.E.2d 717, 156 A.L.R. 1281.
We have been cited to the case of Kendrick v. Mason, 234 La. 271, 99 So.2d 108, and King v. Mason, La.App., 95 So.2d 705, in support of the contention that the accident in question was covered by the insurance policy. In the Kendrick case, which quoted extensively from the King case, the Supreme Court held that a policy which was similar in nature to the present one covered the accident in question. However, in that case (99 So.2d at 116) the Supreme Court said:
“We find our conclusion amply supported by the case of Smith v. United States Fidelity and Guaranty Company, 1942, 142 Neb. 321, 6 N.W.2d 81, 83, wherein the following exclusion clause employed by the insurer relieved it of liability:
“ ‘This policy shall not cover loss from liability for, or any suit based [there] on, injuries or death; * * * (4) Caused by accidents occurring after .final completion of the work performed by the insured at the place of occurrence of such accidents.’
“It is clearly apparent that in that cited case the exclusion clause covered completed operations of a work performed under a contract. Certainly this clause clearly expressed the insurer’s non-liability for accidents, occurring after completion of the work. In the instant case the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligation therein. An analysis of the exclusion and exceptions therein clearly demonstrates an ambiguity and vagueness which under our well settled jurisprudence must be construed against the insurer. See Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111, wherein general principles in the interpretation of insurance contracts are enunciated.”
Now, in the present case, we find an exclusion similar to that found in the Smith case and this exclusion provides as follows:
“This policy does not apply: (a) * * * ; (b) * * * ; (c) under Division 1 of the definition of hazards, and under coverage ‘c’ 2. (1) the independent contractors’ hazard or (2) the products — completed operations hazard.” (Emphasis supplied.)
The clear and unambiguous wording of the Supreme Court in King v. Mason would distinguish the present situation from that found in the said case, so as to exclude com *752 pleted operations fx-om the provisions of the policy.
From the wording of this policy, the “Products — Completed Operations” hazard is a separate and distinct risk for which a separate premium would be required. The assured in this case purchased only the “Premises — Operations” insurance which coverage protected him only as against accidents which occurred during the progress of the work. He did not have “Completed Operations” coverage which would have been necessary in order to bring the accident in question within the coverage of his policy of insurance.
For the reasons assigned, we believe that the judgment of the Lower Court should be amended so as to dismiss the suit insofar as it pertains against the General Accident Fire and Life Assurance Corp., Ltd.
As to the question of quantum, the Lower Court awarded the sum of $10,000.00 plus special damages to Mrs. Glass. The record reveals that Mrs. Glass had been experiencing menopause for a period of some time prior to the accident. Her own physician, Dr. C. B. Luikart testified that she was of an extremely nervous nature, prior to the accident, probably due to the menopause. Dr. Luikart testified that he first saw Mrs. Glass four days after the accident at which time she was upset, nervous and complained of headaches. His examination revealed no abnormality of her nervous system from the standpoint of organic damage. After this examination, Dr. Lui-kart testified that he expected no further consultation with his patient as a result of the accident, however, she continued to complain, and he hospitalized her for investigation from December 12, 1958 to December 16, 1958. No abnormalities were found, and she had improved when she was discharged. Dr. Luikart did not suggest bed rest nor that she should stay at home. Mrs. Glass, however, continued to complain, and she was again hospitalized for further examination from January 18, to January 25, 1959. Again no abnormalities were found. However, after the second discharge, Mrs. Glass continued to complain of dizziness, headaches, increased irritabilities, and that she had a tendency to fall easily. Dr. Lui-kart testified that she was more nervous than she was prior to the accident, and he suggested that she give up her teaching profession for one semester, which she did. Mrs. Glass resumed teaching in September of 1959. Dr. Luikart again saw her during August of 1960, at which time he found no abnormalities except that she was somewhat overweight. Her nervous condition had apparently diminished. Dr. Luikard testified that he believed the electrical shock precipitated the symptoms, but caused no organic damage. Dr. George Caruso, a psychiatrist, saw Mrs. Glass on October 27, 1960 and November 1, 1960, which was shortly prior to the trial. He testified that his examinations revealed that Mrs. Glass was schizophrenic long before she received the electrical shock and that, although an electrical shock could not cause schizophrenia, it could definitely precipitate an acute display of schizophrenic symptoms in a person whose disease was latent. In summary, the medical testimony indicates to us that the symptoms suffered by Mrs. Glass were aggravated as a result of the accident, however, at the time of the trial, it appears that they had subsided and were of no greater a degree than they had been prior to the shock received by Mrs. Glass.
For the above reasons we believe that the award made to Mrs. Glass in the sum of $10,000.00 for all injuries sustained by her is excessive, and should be reduced to the sum of $5,000.00. The award to petitioner, John Glass, in the sum of $1,228.88, and for loss of salary in the sum of $1,753.73, will be affirmed.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to dismiss this suit as it bears against General Accident Fire and Life Assurance Corp., Ltd., and to reduce the amount of quantum allowed Mrs. Glass *753 for her personal injuries to the sum of $5,-000.00 and, as amended, the judgment of the Lower Court will be affirmed. All costs of this appeal to be paid by petitioners.
Judgment amended and affirmed.